Argued May 5, decided July 13, 1909.

## ROESCH *v.* HENRY.

[103 Pac. 439.]

INTOXICATING LIQUORS — LOCAL OPTION—ELECTIONS — APPLICATION AND PROCEEDINGS THEREON—"LEGAL VOTERS."

1. Laws 1905, p. 41, provides that whenever a petition therefor, signed by not less than 10 per cent of the "registered voters" of any county, shall be filed with the county clerk, the county court shall order an election to determine whether the sale of intoxicating liquors shall be prohibited in such

county, and that, in determining whether any such petition contains the requisite percentage of "legal voters," said percentage shall be based on the total vote in such county for Justice of the Supreme Court at the last preceding general election, provided that in no event shall more than five hundred petitioners who are legal voters be necessary upon any such petition, and "the county clerk shall, upon receipt of such petition, immediately file the same, and shall compare the signatures of the electors signing the same with their signatures on the registration books of the election then pending, or, if none pending, with the signatures on the registration books and blanks on file in his office for the preceding general election." *Held*, that the phrase "legal voters" as used in the law is a synonym for "registered voters," and that no qualified elector is a competent petitioner for a local option election unless his signature appears on the registration books, the privilege of signing such a petition not being a right of franchise in which all the electors enumerated in Section 2, Article II, Constitution of Oregon, may participate, but whether there is a sufficient number of signers is to be determined by comparing such number with the number who last voted for justice, and the number of registered voters in a district is only important for the purpose of comparing the signatures of the petitioners with the signatures on the registration books.

INTOXICATING LIQUORS — LOCAL OPTION — ELECTION — ORDER — "LEGAL VOTERS"—"REGISTERED VOTERS."

2. A *county court, in considering a petition for an election to determine* whether the sale of intoxicating liquors shall be prohibited in the county, recited in their order that the matter came before them on the petition of "legal voters" of the county, and that, "it appearing to the court that said petition is signed by more than 10 per cent of the qualified electors, * * and has been properly compared and certified to be genuine and is in all respects in due form of law, it is therefore considered and ordered by the court that the prayer of said petition be and the same is hereby granted." *Held*, that the terms "legal voters" and "qualified electors" as used in the order are not equivalent to "registered voters" as used in Laws 1905, p. 41, providing for the calling of an election to determine whether the sale of intoxicating liquors shall be prohibited on petition of 10 per cent of the "registered voters."

INTOXICATING LIQUORS — LOCAL OPTION — ELECTIONS — DECLARATION OF RESULT—INJUNCTION.

3. A complaint, in proceedings to restrain the county judge and commissioners of a county from declaring the result of an election to determine whether the sale of intoxicating liquors should be prohibited, alleged that the county court, in making the order for such election, acted without jurisdiction, in that the said petition did not contain the requisite number of names of persons who are legal voters in the county. The county court in calling the election acted under Laws 1905, p. 41, providing for calling such an election on a petition signed by not less than 10 per cent of the "registered voters" of a county, but that in no event shall it be necessary to secure more than five hundred petitioners "who are legal voters." *Held*, that the allegation of the complaint was insufficient to contest the validity of the order, because attention was not specifically called to the class of persons who were qualified petitioners.

INTOXICATING LIQUORS—LOCAL OPTION—NOTICE OF ELECTION.

4. A notice of an election, to be held to determine whether the sale of intoxicating liquors should be prohibited in the county which follows the form prescribed by the statute (Laws 1905, p. 45, § 7), is sufficient, although the signature of the county clerk was printed and his official seal was not attached.

INTOXICATING LIQUORS — LOCAL OPTION — NOTICE OF ELECTION — WHO MAY POST.

5. Laws 1905, p. 45, § 7, makes it the duty of the sheriff, before the holding of any local option election, to post the notices which have been delivered to him by the county clerk. The notices prescribed by said Section 7 are not to be issued in the name of the State, nor directed to any person. *Held*, that the election was not affected by the posting of the notices by private persons.

INTOXICATING LIQUORS—LOCAL OPTION—NOTICE OF ELECTION.

6. Laws 1905, p. 44, § 4, provides that no person shall be qualified to vote at any local option election who would not be qualified to vote at that election for precinct and county officers in that precinct in which he offers to vote, and Section 2776, B. & C. Comp., provides that all qualified electors shall vote in the election precinct in the county where they may reside for county officers. In a local option election in a county, there were 1,995 votes cast in favor of prohibition, and 1,305 against it. In a precinct in which the notices of election were not posted as prescribed by law, the number of registered voters were thirty-eight, and at the election therein nine votes were cast in favor of prohibition and twenty-two cast against it. The greatest number of votes cast for any officer in the county at the election in which the question of local option was passed upon was 3,437, or 352 more than were registered. *Held*, that the failure to properly post the notices in that precinct did not invalidate the election, as the number of votes in that precinct could not affect the general result.

JURISDICTION—LOCAL OPTION—NOTICE OF ELECTION.

7. Jurisdiction comes, in the first instance, from the petition and order of the county court submitting the question of prohibition to a vote, and not from the notice, which is a mere incident, and therefore a substantial compliance with the statute is all that is required.

(From opinion of MR. JUSTICE McBRIDE.)

From Union: THOMAS H. CRAWFORD, Judge.

This suit was commenced in the circuit court of Union County, by Julius Roesch against J. C. Henry, county judge, J. M. Selder and Ben Brown, as county commissioners, constituting the county court for Union County, Oregon, for the transaction of county business, to restrain them, as such officers, from declaring the result of a local option election. From a decree dismissing the suit, plaintiff appeals. AFFIRMED.

For appellant there was a brief over the names of *Mr. B. F. Wilson* and *Mr. Charles H. Finn,* with an oral argument by *Mr. Finn.*

For respondent there was a brief over the names of *Mr. Francis S. Ivanhoe,* district attorney, with oral arguments by *Mr. Ivanhoe* and *Mr. Andrew M. Crawford,* Attorney General.

Opinion by MR. CHIEF JUSTICE MOORE.

This is an appeal by Julius Roesch, a brewer at La Grande, from a decree dismissing a suit instituted to restrain the county judge and commissioners of Union County from declaring the result of an election, held therein June 1, 1908, for the purpose of determining whether or not the sale of intoxicating liquors, as a beverage, should be prohibited, and to enjoin them from interdicting such sales. It is contended by plaintiff's counsel that the requirements of the local option liquor law were not complied with in the following particulars: (1) The sufficiency of the petition initiating the proceedings was not determined by defendants when the election was ordered; (2) the notices of election were insufficient; (3) they were not posted as required by law. Based on these alleged defects, it is insisted that in dismissing the suit, and in failing to grant the relief invoked, errors were committed. We shall consider these questions in the order stated.

1. The complaint sets forth a copy of the authorization of the election as follows:

"Now at this time, to wit, on the second day of April, A. D. 1908, this matter came before the court upon the petition of W. A. Worstel and others, legal voters of Union County, Oregon, praying that an election be held on Monday, the first day of June, A. D. 1908, the same being the time for the general election in Oregon for State and county officers, to determine whether or not the sale of intoxicating liquors shall be prohibited in said Union County, Oregon; and, it appearing to the court that said petition is signed by more than ten per cent of the qualified electors of Union County, as required by law, and has been properly compared and certified to be genuine, and is in all respects in due form of law, it is therefore considered and ordered by the court that the prayer of said petition be, and the same hereby is, granted. It is further ordered that an election within Union County as a whole be had on the first day of June, A. D. 1908, to determine whether the sale of intoxicating liquors shall be prohibited in such county. It is further

ordered that the county clerk of Union County, Oregon, be and he hereby is, ordered and directed to give the notice of said election in the manner and at the time required by law."

It is argued by plaintiff's counsel that the county court of Union County is a tribunal of limited power; that no presumptions or inferences can be indulged in aid of its record, which must speak for itself; that the order quoted fails to state the probative facts necessary to confer jurisdiction of the subject matter; and that hence its pretended authorization of the election was void.

In order to understand clearly the legal principle insisted upon, parts of the local option law (Laws 1905, p. 41) will be set forth to wit:

"Whenever a petition therefor signed by not less than ten per cent of the registered voters of any county in the State, or subdivision of any county, or precinct of a county, shall be filed with the county clerk of such county, in the manner in this act prescribed, the county court of such county shall order an election to be held at the time mentioned in such petition, and in the entire district mentioned in such petition, to determine whether the sale of intoxicating liquors shall be prohibited in such county or subdivision of such county or in such precinct. In determining whether any such petition contains the requisite percentage of legal voters, said percentage shall be based on the total vote in such county or subdivision of county, or in such precinct, as the case may be, for Justice of the Supreme Court, at the last preceding election; *Provided,* that in no event shall more than five hundred petitioners, who are legal voters, be necessary upon any petition to require an election as herein provided: Section I. * * The county clerk shall, upon receipt of such petition, immediately file the same and shall thereupon compare the signatures of the electors signing the same with their signatures on the registration books of the election then pending, or if none pending, then with the signatures on the registration books and blanks on file in his office for the preceding general election." Section 6.

It will be noted that section 1 of the act requires the petitioners for a local option election to be "registered voters." The phrase "legal voters" is also used in that section, but it was evidently employed as a snyonym for the term "registered voters," and to avoid a repetition thereof. The phrase "legal voters" also appears in section 5 of the act in the form prescribed for the petition. It will be remembered that the county clerk is directed to compare with their handwriting the petitioners' signatures as they appear on the registration books and blanks on file in his office. Construing these clauses in *pari materia,* it is manifest that no qualified elector or legal voter is a competent petitioner for a local option election unless his signature appears on the registration books of the election then pending; or, if no election be pending, then his signature must appear on the registration books and blanks of the preceding general election. The privilege of signing a petition, to initiate a local option election, is not a right of franchise in which all electors enumerated in the organic law (Section 2, Article II, Constitution of Oregon) can participate.

2. The act under consideration does not specify any particular day during which the signatures to the petition must be obtained, nor does it require that any notice should be given that a petition will be circulated. As only 10 per cent of the registered voters are necessary to cause a local option measure to be submitted for ratification or rejection, the signing of a petition for that purpose is not the expression of a choice in favor of, or opposed to, prohibiting the sale of intoxicating liquors; and hence the appending of signatures to the petition is not an election. This being so, the qualifications of the petitioners may be limited and restricted in such manner as may be prescribed. An examination of the order of the county court, hereinbefore quoted, will show that no express finding is made that the petition had been signed by "registered voters," though the order uses the phrases

"legal voters" and "qualified electors." These latter terms, however, are interchangeable; but, as an elector who has not registered is entitled to vote at an election, by making the required proof (Laws 1905, p. 259), it follows that the term "legal voters" or "qualified electors" is not equivalent to the phrase "registered voters."

3. That part of the complaint, as set forth in plaintiff's brief, which challenges the sufficiency of the authorization of the local option election, is as follows:

"That defendants, acting as the county court of Union County, Oregon, for the transaction of county business, in the making of the said order of April 2, 1908, ordering and directing that an election be held to determine whether or not the sale of intoxicating liquors should be prohibited in Union County as a whole, acted without jurisdiction, in that the said petition did not, and does not, contain the requisite number of names of persons who were legal voters of Union County, Oregon, as provided by law; and the said order of April 2, 1908, so submitting the said question to the legal voters of Union County at the said election, was and is null and void."

It will be seen from the language so quoted that the gist of the allegation is that the petition did not contain the requisite number of names of persons who were legal voters of Union County, Oregon. It is not charged in the complaint that the petition did not contain the necessary number of "registered voters." The answer alleges that the petition embraced the names of 542 legal voters, "as shown by the registration of voters of said county," and that the total number of votes cast therein for Justice of the Supreme Court at the last preceding general election was 3,030. This averment was denied in the reply; and, based upon such issue, the court, from the evidence submitted, found the facts as thus alleged in the answer.

If the question of local option were invariably submitted when a general election is held, it can readily be seen that the number of registered voters would possibly increase each day while the petition was being

circulated, so that it might be difficult to determine when the signatures of the required percentage of the registered voters had been secured. As the voters of a county must be registered in the even-numbered years (Section 2865, B. & C. Comp)—that is, during the year a general election is held (Section 14, Article II, Constitution of Oregon, as amended by laws 1909, p. 8)—and, as an election to determine whether or not the sale of intoxicating liquors shall be prohibited can occur only on the first Monday in June of any year (Laws 1905, p. 43, § 3), it can be perceived that, if a local option election is held in the odd-numbered year, the required number of petitioners, if less than 500, could be determined only from an inspection of the registration books and blanks of the preceding year. To avoid any uncertainty that might arise from the increasing registration of voters when a local option election is held at the time of a general election, section 1 of the local option law was evidently so framed as to make the vote cast for Justice of the Supreme Court at the last preceding general election equivalent to the number of voters who have been registered. Therefore, in all local option elections the number of registered voters in a given district at any particular time is immaterial, except for the purpose of comparing the signature of the petitioners with their signatures on the registration books and blanks, since the total vote cast in a county, or in a subdivision thereof, or in a precinct therein, as the case may be, for Justice of the Supreme Court at the last preceding general election constantly forms the basis for computation in determining whether or not a petition contains the requisite number of signatures, except where 500 registered petitioners are secured.

In the case at bar, if the order authorizing the election had expressly stated that the petition contained the names of not less than 500 registered voters of Union County, the finding would have been sufficient. So, too, in any

case, if the petition was not signed by 500 registered voters, the order of the county court could state the number of such registered voters whose names were appended to the petition, and give the total vote cast for Justice of the Supreme Court at the last preceding general election in the county, or in a subdivision thereof, or in a precinct therein, as the case might be; and such conclusions of fact would be ample. It would be easy. to determine, from such recital in the order, whether or not the number of petitioners who were registered voters sustained the proper ratio to the total vote so cast for a Justice of the Supreme Court, without deducing the legal conclusion that the petition was signed by not less than 10 per cent of the registered voters of the specified territory. It will be remembered that the part of the complaint hereinbefore quoted does not aver that the order of the county court authorizing the local option election is void, in that the petition did not contain the requisite number of names of persons who were "registered" voters of Union County. The answer denies the allegations of the complaint, and avers that the petition contained the names of 542 legal voters, "as shown by the registration of voters of said county." No demurrer was interposed to the answer, and the averments of new matter therein were denied in the reply.

The allegation of the complaint is insufficient to contest the validity of the order of the county court, because attention is not thereby specifically called to. the class of persons who are qualified petitioners. The answer distinctly alleges that the petition contained the requisite number of "registered voters"; and, as such averment was not challenged by demurrer, it will be assumed, without deciding the question, that the order of the county court authorizing the local option election was subject to review. Based on the issue made by the reply, the original petition for the local option election, having been identified, was offered in evidence, and has been

sent up to this court. Ed Wright, the deputy county
clerk of Union County, testified that the names subscribed
to the local option petition were compared with the regis-
tration books of that county for the year 1908, and it
was found that 542 of the petitioners had been registered
and were legal voters. This witness also identified an
abstract of the returns of the votes cast in the several
precincts of that county at the last preceding general
election, and stated that the total vote so given for Justice
of the Supreme Court was 3,030. The court made findings
of fact according to such testimony, and conformable
with the averments of the answer.

We conclude that, if the order complained of was
defective because of the insufficiency of the findings, the
imperfection was not particularly pointed out by the
averments of the complaint; that the evidence submitted
at the trial herein on the issue made by the answer and
reply justified the finding made by the court, and that
such conclusion of fact demonstrates that the county
court properly ordered an election to be held to determine
whether or not the sale of intoxicating liquors should
be prohibited in the entire county.

4. It is maintained by plaintiff's counsel that, because
the notices of the local option election did not have the
name of the county clerk written thereon, nor his signa-
ture attested by the seal of the county court, the print-
ing of his name on the notices was ineffectual and did
not impart that information which they were designed
to supply. One of the notices, which, from its appearance,
was posted, having been identified, was received in evi-
dence, and has been sent up with the transcript. This
notice complied with the form prescribed by the local
option law (section 7), which does not direct that such
notices shall be signed by the county clerk or authenti-
cated by a seal. In *Herrick* v. *Morrill*, 37 Minn. 250 (33
N. W. 849: 5 Am. St. Rep. 841), in determining the
sufficiency of process, it was held that any signature,

whether written, printed, or lithographed, which the party issuing the summons might adopt as his own, was sufficient. It has been ruled by this court that, where an officer adopts a printed signature as his own, such use is adequate for the purpose for which it was employed. *State* v. *Belding,* 43 Or. 95 (71 Pac. 330) ; *State* v. *Guglielmo,* 46 Or. 250 (79 Pac. 577: 80 Pac. 103: 69 L. R. A. 466). The notices were, in our opinion, sufficient.

5. It is argued by plaintiff's counsel that because some of the notices of election were posted by persons who were not deputies of the sheriff, the advertisement so given was unavailing. The local option law imposes on the sheriff the duty to post five election notices in each precinct in which a vote upon the question of prohibition is to be taken, and thereupon briefly to enter of record his compliance with such requirements. Laws 1905, p. 45, § 7. The transcript herein shows that the required number of notices were posted in 10 of the 22 precincts of Union County by the sheriff thereof, as evidenced by his several certificates showing when and where each notice was put up. In the remaining precincts, however, the notices were posted by persons who were not specially appointed by written authority, but who, respectively, made similar proof by affidavits. The election notice prescribed by section 7 of the local option law is not issued in the name of the State, nor is it directed to any person. The posting of the notice could as well be done by a private person as by a public officer; except that the latter only could be compelled to perform such service, and for any failure in that respect he might, by proper enactment, be held responsible for a breach of the duty. The sheriff has been designated by the statute as the officer to post local option election notices. If, in the performance of that duty, he employs persons whom he does not, by special written appointment, authorize to perform such service (Section 1012, B. & C. Comp.), and the persons so selected discharge that duty

properly, the only credit he usually receives is the satis-
faction of having performed an obligation which the law
imposed.  If his agents fail, however, to post the notices
properly, in consequence of which the will of a majority
of the people, expressed at the polls, is defeated, the
sheriff must necessarily be subjected to the just censure
which an outraged public entertains.  The self-approba-
tion for an obligation faithfully performed, and the blame
of the community for a service neglected, are generally
sufficient inducements to guarantee the performance of a
public duty enjoined.  These propelling incentives support
the conclusion that a sheriff may select as his agents
persons whom he does not specially appoint as deputies,
and that they may legally post local option election notices.
Thus in *Jordon* v. *Hayne,* 36 Iowa 9, 16, a tax in aid of
the construction of a railroad having been voted at a
special election held for that purpose, the regularity of
the proceedings was challenged by certiorari, on the
ground, *inter alia,* that the notices of election were not
posted by the proper person.  In deciding the case it is
said: "The return shows that the notices of the election
required by law were given.  The fact that they were
posted by the clerk instead of the trustees does not affect
their sufficiency.  The trustees  in  this  matter  acted
through the clerk as their agent."  To the same effect
see *Battis* v. *Price,* 2 Pears. (Pa.) 456, 459; *Phillips* v.
*Town of Albany,* 28 Wis. 340, 356.

The plaintiff's counsel, invoking the rule announced in
the case of *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac.
158), contend that as one of the sheriff's agents posted
only three election notices in Kamela precinct, such failure
strictly to comply with the requirements of the local option
law invalidated the election in the entire county.  The
transcript herein shows that in Union County, at the
election specified, 1,995 votes were cast in favor of pro-
hibition, and 1,305 against it, thus giving a majority in
support of the measure of 690, making the total vote upon

the question 3,300, while the number of legal voters who registered prior to the election was only 3,085, and the pleadings admit that the greatest number of votes cast for any officer was 3,437. In the precinct in which only three election notices were posted the number of registered voters was 38, and at the election therein nine votes were cast in favor of prohibition and 22 against it. The case to which attention is called was a suit to enjoin the making of an order prohibiting the sale of intoxicating liquors in Grant County, pursuant to an election held therein June 1, 1908. As stated in the opinion, it appeared that in one precinct no election notices were posted. In another precinct only three notices were put up, and were so posted only eight days before election; and in two other precincts five notices were put up in each, ten and eleven days, respectively, before election. Based upon such showing, it was held that the failure of the sheriff strictly to comply with the requirements of the provision of the local option law rendered the election nugatory. In reaching that conclusion Mr. Chief Justice BEAN observes: "It is said that no substantial injury resulted in the case under consideration from the failure to post the notices as required by law, but this can never be known. There were, in fact, less votes cast on the question of prohibition than for some of the county officers, and there is no means of determining how many voters did not attend the election who would have done so if they had been advised that such question was to be submitted." We have re-examined the record in the case of *Guernsey* v. *McHaley, supra,* on file in this court, and discover that at the election in the entire county 695 votes were cast in favor of prohibition and 673 against it, making a majority of only 22 in support of the measure. It was stipulated by the parties to that suit that 112 qualified electors of Grant County voted for county officers who did not vote in favor of or against prohibiting the sale of intoxicating liquors. It

can thus be seen that if 22 of such number who did not express at the polls an opinion upon the question of prohibition had voted against the measure, it would have been defeated. It will be remembered that no notices were put up in one precinct in Grant County, and that in three other precincts therein the notices were posted in advance only eight, ten and eleven days, respectively, when the local option law requires that such notices shall be posted at least twelve days prior to an election. Laws 1905, p. 45, § 7.

In the case at bar it will be borne in mind that the majority in favor of prohibition was 690; that the entire vote cast for and against prohibition was 3,300, which number exceeded by 215 the qualified electors who had registered, and that the greatest number of votes polled for any officer was 3,437, or 137 more than were cast on the question of prohibiting the sale of intoxicating liquors. If the electors who expressed at the polls no choice in relation to the matter under consideration, had voted against prohibition, the measure would then have had a majority of 493. The local option law contains a clause as follows:

"No person shall be qualified to vote at any election hereunder who would not be qualified to vote at that election for precinct and county officers in the precinct in which he offers to vote." Laws 1905, p. 44, § 4. "All qualified electors shall vote in the election precinct in the county where they may reside for county officers." Section 2776, B. & C. Comp.

In the case at bar, though the election involved the entire county, each precinct therein was considered as a unit, and regarded as an integral part of the whole. The notice required to be posted in each precinct was evidently designed to inform the legal voters of such precinct that at an election which was pending therein the question of prohibition would be determined. If such notices were read by qualified electors who resided

in other precincts, the information thus acquired would undoubtedly apprise them of the question thus to be decided. It is quite evident that the posting of notices in each precinct was designed to advise the legal voters of only that precinct that an election would be held therein, and not to inform the qualified electors of some other precinct. Hence a failure properly to post the required number of election notices for the prescribed time in a given precinct ought not to affect the vote in the entire county, unless the number of votes in such precinct would probably affect the general result. Where it appears, as in *Guernsey* v. *McHaley.* 52 Or. 555 (98 Pac. 158), that the irregularities are of such character and magnitude that they might have affected the outcome, the election ought to be set aside, but if no such result is reasonably probable, the election ought not to be disturbed. Thus, as was said by the Supreme Court of Washington, in *State* v. *Doherty,* 16 Wash. 382 (47 Pac. 958: 58, Am. St. Rep. 39, 43) : "The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election." In a note to section 197 of Dillon's Municipal Corporations (3 ed.) the author remarks:

"It is now a canon of election law than an election is not to be set aside for a mere informality or irregularity which cannot be said in any manner to have affected the result of the election."

In *Wheat* v. *Smith,* 50 Ark. 266 (7 S. W. 161, 165), Mr. Chief Justice COCKRILL, in speaking of a special election, observes: "The question in such cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election. * * When the election is legally ordered, and the electors are actually apprised of the time and place appointed

for holding it, the misfeasance or nonfeasance of the officer upon whom the statute devolves the duty of giving the election notices cannot deprive the electors of the right to express their will through their ballots." The greatest number of votes cast for any officer in Union County at the election held June 1, 1908, was 3,437, or 352 more than were registered. It is impossible to say with any degree of accuracy how many legal voters, who were not registered, did not attend the election, but it is fair to assume that the number of registered voters is a fair index of the qualified electors of a precinct; and this being so, no system of calculation can so change a registration of 38 voters as to overcome a majority of 690 votes in favor of prohibition. We think the rule of law should be that no precinct was affected by the want of sufficient notice but Kamela, and that such defect could not by any possibility have changed the result of the election if the required number of notices had been posted.

Believing that no error was committed as alleged, the decree is affirmed.                        AFFIRMED.

MR. JUSTICE MCBRIDE delivered the following opinion.

I concur in the conclusion arrived at by the Chief Justice, but not entirely upon the same grounds. This case rests upon one proposition, namely, whether the posting of a notice of a special election, in the manner required by law, is a jurisdictional matter, requiring the same strictness of compliance as a public road notice or whether a substantial compliance will be sufficient. I do not suppose it will make any great difference whether thirsty citizens of Union County get their supplies at licensed saloons, as they have been wont to do for these many years, or are compelled to adopt the inconvenient methods frequently practiced in the so-called "dry counties," but the principle involved here is far-reaching. Local option elections are not the only special elections in which citizens are likely to be required to participate. Special elections to fill

vacancies in office may be called by proclamation of the Governor, and I hesitate to adopt a rule which will say that the citizens of a State or county, or even a precinct, may be disfranchised by the failure of a careless or fraudulent officer to post a single notice. Suppose a special election for the entire State should be called upon some measure or office. If the failure to post a notice in Kamela precinct disfranchises more than 3,000 voters in Union County, then a like failure in the smallest precinct in the State would disfranchise every voter in the commonwealth. There are decisions taking both views of this question, but I think a fair view, and that most consonant with justice, is that unless there is some probability that a trifling failure apparently negligible has, in fact, changed the result, or there is some reasonable ground for doubt on that question, it ought not to avoid the election even in the precinct where the mistake occurred. I believe the statute so far directory that a substantial compliance is all that is necessary, and that jurisdiction comes in the first instance from the petition and order of the court submitting the question of prohibition to a vote, and not from the notice, which is a mere incident.

Speaking of statutes similar to the one under consideration a learned author says:

"It may, perhaps, be found generally correct to say that nullification is the natural and usual consequence of disobedience, but the question is in the main governed by considerations of convenience and justice; and, when that result would involve general inconvenience or injustice to innocent persons, or advantage to those guilty of the neglect without promoting the real aim and object of the enactment, such an intention is not to be attributed to the legislature. * * When a public duty is imposed, and the statute requires that it shall be performed in a certain manner, or within a certain time, or under other specified conditions, such prescriptions may well be regarded as directory only, when injustice or inconvenience to others who have no control over those

exercising the duty would result if such requirements were essential or imperative." Maxwell, Interp. Stat. 556, 557.

Every word above cited applies forcibly to the case at bar. The statute imposed a duty on the sheriff, to wit, to post five notices in every precinct in Union County. He failed in that duty in one precinct. Now, shall the law be so construed as to punish 3,000 innocent voters for his malfeasance, or shall they be allowed to have their votes counted, and the consequences of his neglect be visited upon the sheriff? The latter course seems to me to be the one justice and sound law dictate in this case.

MR. JUSTICE SLATER delivered the following dissenting opinion.

I am unable to agree with the conclusion reached by the learned Chief Justice as to the effect of the failure of the sheriff to post the required number of notices in Kamela precinct. The law requires that five notices be posted in each precinct at least twelve days before the election. In this instance but three were posted in Kamela precinct, and it is held that posting of notices in each precinct was designed to advise the voters of only that precinct that an election would be held therein, and not to inform the voters of some other precinct. Hence the conclusion that a failure properly to post the required number of election notices in a given precinct ought not to affect the vote in the entire county, unless the number of votes in such precinct would probably affect the general result. And because the majority for prohibition in the entire county was relatively large as compared with the total registered vote in Kamela precinct, it is argued that it is not reasonably probable that the absence of notice affected the general result. This line of reasoning treats the failure to give notice merely as an irregularity which would render the election voidable it substantial injury resulted, and

not *per se* void. The conclusion reached in the main
opinion is opposed to the principle of law announced
by this court in *Marsden* v. *Harlocker,* 48 Or. 90 (85
Pac. 328: 120 Am. St. Rep. 786), and in *Guernsey* v.
*McHaley,* 52 Or. 555 (98 Pac. 158). In the former
case it was held that in special elections a compliance
with all the statutory requirements in respect to the
performance of the conditions precedent is mandatory
in order to validate the election. The latter case followed
and expressly approved of that declaration, citing *ex
parte* Conley (Tex. Cr. App.) 75 S. W. 301, as supporting
such pronouncement of the law. This is a Texas case
which arose under the local option law of that state,
from which the law of this State was borrowed. Mr.
Chief Justice BEAN, who wrote the opinion in *Guernsey*
v. *McHaley,* understood the Texas court to hold "that an
election under the local option law was void when it
appeared that all but one of the notices had been posted
the required length of time, and the election had been
fair, and no actual injury resulted on account of the
failure to give the requisite notice, for the reason that
the lawmaking power had seen fit to provide the pre-
requisites of a legal vote, and the court could not disre-
gard or dispense with any of them." An examination of
the opinion in that case shows this interpretation of it
not only to be correct, but the conclusion reached is
emphasized by that court in this language: "If the
failure to post notices * * renders the election void,
then the fact that it may have been fair, and that no
actual injury resulted in the failure to comply with
these prerequisites of the law, cannot render the law
(election) valid." If the requirements of the law in
respect to the making of an order by the county
court and the posting of notices by the sheriff are
mandatory, then the strict performance of them is
essential to the validity of the election, and the question
of material or substantial injury flowing from the

omission of either is not material. It is only when the
thing to be done is merely directory, and the omission
thereof renders what follows voidable and not void,
that the question of substantial injury is material to be
considered. It is upon this distinction that the conflict
in the cases has arisen. Those holding to the doctrine
that the provisions of statutes requiring a particular
form of notice for the holding of special elections are
mandatory and must be strictly followed have been cited
and followed in *Marsden* v. *Harlocker,* and *Guernsey* v.
*McHaley,* and some of those holding to the opposite
opinion are now cited in support of the majority opinion
in this case. In *State* v. *Doherty,* 16 Wash. 382 (47 Pac.
958: 58 Am. St. Rep. 39, 43), it was held that the
particular form and manner pointed out by statute for
giving notice is not essential, following the previous
holding of that court in *Seymour* v. *Tacoma,* 6 Wash. 427
(33 Pac. 1059), to the effect that the formalities of
giving notice, although prescribed by statute, are merely
directory, unless there is a declaration that if the
formalities are not observed the election shall be void.
In *Wheat* v. *Smith,* 50 Ark. 266 (7 S. W. 161, 165), it
is said, immediately preceding the excerpt quoted there-
from in the majority opinion, that "the particular form
and manner pointed out by the statute for the giving
of notice is not essential;" that is, it is merely directory.
I can agree with Mr. Dillon's quoted remark that it is
now a canon of election law that an election is not to be
set aside for a mere informality or irregularity which
cannot be said in any manner to have affected the result
of the election"—but the question upon which we differ
is whether the failure to give notice is an "informality
or irregularity." That author, in the text just above
the footnote from which the excerpt is taken, says: "If
the time be not defined by statute, and is to be fixed by
notice, the notice required is imperative." Believing
that the notice required by the statute in this case was

essential, and that the failure to post the notices rendered the election void as to the particular matter in question, the decree should be reversed, and an order of injunction issued.

MR. JUSTICE KING concurs in this dissent.