Argued August 20, affirmed October 22, reconsideration denied
November 29, 1979, petition for review allowed January 15, 1980

WEST SIDE SANITARY DISTRICT, et al,
*Petitioners,*

*v.*

HEALTH DIVISION OF THE
DEPARTMENT OF HUMAN RESOURCES, et al,
*Respondents.*

(CA 13765)

601 P2d 858

Steven P. Couch, Klamath Falls, argued the cause for petitioners. With him on the brief was E. R. Bashaw, Medford.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Petitioner West Side Sanitary District seeks review of orders rendered by the Environmental Quality Commission and the Health Division in an annexation proceeding under ORS 222.850 to 222.915. The area subject to annexation now receives sanitary services from petitioner. Annexation to the city of Klamath Falls has been proposed because of inadequacies in existing sewage facilities in the area.

ORS 222.855 provides:

"In addition to the procedures authorized in ORS 222.010 to 222.750, territory otherwise eligible for annexation in accordance with ORS 222.111 may be annexed by passage of an ordinance as provided in ORS 222.900 without any vote in such territory or any consent by the owners of land therein if it is found, as provided in ORS 222.850 to 229.915, that a danger to public health exists because of conditions within the territory and that such conditions can be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities."

ORS 222.850(4) defines "[d]anger to public health" as including:

"(b) Inadequate installations for the disposal or treatment of sewage, garbage or other contaminated or putrifying waste."

Under ORS 222.850 to 222.915, the determination of whether a condition dangerous to public health exists is made by the Health Division after a hearing. If the existence of such a condition is found, the city which is to annex the area then prepares a proposed plan to alleviate the condition. An alternative plan may also be presented through a petition signed by not less than 51 percent of the registered voters in the area. The Environmental Quality Commission then considers the city's plan or, if one is submitted, the

[757]

petitioners' alternative plan.[1] If the Commission approves the city plan, annexation of the area is required and is formally effected through the adoption of an ordinance by the city. Here, after a contested case hearing, the Health Division found that the sewage facilities in the area constituted a danger to public health. Thereafter, the city of Klamath Falls submitted a proposed alleviation plan to the Commission, which the Commission approved by order on January 26, 1979. Petitioner concedes that the condition of the sewage facilities in the area requires correction and has prepared its own proposal for alleviating the condition.

Petitioner's first assignment of error is that the agencies erred in failing to consider the alternative alleviation plan submitted by petition of registered voters in the affected area. ORS 222.885 provides that, within 30 days after the Health Division's determination that a condition dangerous to public health exists,

> "*** a petition, signed by not less than 51 percent of the registered voters in the territory proposed to be annexed, may be filed with the division. Such petition shall suggest an alternative plan to annexation to the city for removal or alleviation of the conditions dangerous to public health. The petition shall state the intent of the residents to seek annexation to an existing sanitary authority, county service district or other special district authorized by law to provide facilities necessary to remove or alleviate the dangerous conditions. The petition shall be accompanied by a proposed plan which shall state the type of facilities to be constructed, a proposed means of financing the facilities, and an estimate of the time required to construct such facilities and place them in operation."

The Division is required, upon the filing of such a petition, to order that further proceedings be stayed until review of the alternative plan by the Environmental Quality Commission takes place. ORS

---

[1] The commission performs this function in the case of all health hazards except "impure or inadequate domestic water." The Health Division is responsible for consideration of alleviation plans for that hazard.

222.885(2)(b). If that review results in acceptance of the alternative plan, "[f]urther annexation proceedings *** shall be terminated ***." ORS 222.890(3).

Here, a petition signed by only 161 of the registered voters in the area was filed pursuant to ORS 222.885. The number of registered voters, as shown by county records, was 380. Petitioner contends that approximately 100 of the names shown by the county records are of persons who have died or no longer reside in the area and that those names cannot be considered in determining the number of registered voters. If those names are not to be counted, the number of signers was well over 51 percent of the remaining names on the registration list.

Petitioner's argument is, in essence, that the term "registered voters" as used in ORS 222.885 refers to those persons who are currently registered *and* qualified to vote in the area. The agencies respond that the term refers to the number of names on the county clerk's registration list, and that the Health Division is not required to look behind that list to ascertain which persons on it remain qualified voters for purposes of determining whether a petition contains sufficient signatures. We agree with the agencies' argument. We do not believe that the legislature could have intended that the Division make the independent determination of voter qualification which would be necessary if petitioner's argument were accepted. It is the duty of the county clerk, not the Health Division, to maintain the registration list and to keep it current. *See, e.g.*, ORS 247.550 *et seq.* The Division is entitled to rely on the presumption that the county clerk regularly performs that official duty.

■ We also note that the action by registered voters which ORS 222.885 authorizes has nothing to do with the exercise of the franchise or with anything else which suggests that the legislature was referring to legal or qualified electors rather than to the number of names on the registration list. Indeed, ORS 222.855

expressly provides that there is to be no election on the question of annexation under this statutory scheme, notwithstanding the general requirement that annexations are subject to voter approval. *Cf. Roesch v. Henry,* 54 Or 230, 103 P 439 (1909). We conclude that "registered voters" as used in ORS 222.885 refers to the names appearing on the county's registration list, and that the Health Division's responsibility in determining whether a petition filed under that statute contains sufficient signatures consists of the purely ministerial act of dividing the number of valid signatures on the petition by the number of registered voters shown by the county records.

■ Petitioner next contends that the agency actions were unlawful in substance because the annexation was unreasonable and because the agencies did not consider evidence relating to the reasonableness of the annexation. Petitioner relies on *Portland Gen. Elec. Co. v. City of Estacada,* 194 Or 145, 159, 241 P2d 1129 (1952), in which the court stated:

> "*** [I]n statutes empowering cities to legislate annexation proceedings, there is implied within the legislative grant that such cities must legislate reasonably and not arbitrarily, and such reasonableness is a part of the legislative grant to the same extent as if it were written literally into the statute."

Petitioner argues that the annexation was not reasonable because of the territorial configuration connecting the area to the city, the effect of that configuration and of the annexation itself on existing fire protection and water supply services in the area, and the fact that there is an existing sanitary district for the area which has developed a plan which petitioner characterizes as being essentially identical to the city's. The legislature has expressly made the existence of a danger to public health under circumstances to which ORS 222.850 to 222.915 apply a ground for annexation. Petitioner does not contend that the statutes are constitutionally infirm. *Cf. Trueblood v. Health Division,* 28 Or App 433,

559 P2d 931, *rev den* (1977). Annexation under such circumstances is reasonable.

■ Petitioner argues that ORS 222.850 to 222.915 do not apply to areas which are served by an existing sanitary district "unless the latter is unable to function." Nothing in the language or logic of the statutes supports that argument. ORS 222.890(2) provides that, *if* an alternative plan is submitted by petition and the Commission finds the alternative plan preferable to annexation, the petitioner shall have six months to show that the territory "has annexed to a sanitary authority" or other entity authorized by law to provide corrective facilities. No corresponding provision exists where, as here, no alternative plan is proposed by petition. Moreover, where there is an *existing* sanitary district serving the area and there is nevertheless a health hazard due to defective sanitary facilities, the purposes of the statutes plainly would not be served by making the annexation solution unavailable because of the existence of a district which is not providing adequate facilities.

■ Petitioner's next argument is that the agencies erred by not considering statewide planning goals and by not considering evidence germane thereto. *See Petersen v. Klamath Falls*, 279 Or 249, 566 P2d 1193 (1977).

ORS 197.180(1) requires that

"[s]tate agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use in accordance with state-wide planning goals approved pursuant to ORS 197.005 to 197.430 and 469.350."

The agency actions here did not involve decisions about land use. They were taken under statutes which mandate that if particular conditions exist, annexation automatically follows. Accordingly, even if annexation has land use implications, ORS 197.180(1) has no application.

■  Finally, petitioner argues that the findings of the Health Division are inadequate and do not support its conclusions. In particular, the petitioner argues that

> "*** there is no finding that the existing petitioner sanitary district was unable or unwilling to provide the very kind of sewers that cities 'ordinarily' provide or that the district's provisions for sewering the area, taken as part of the 'condition' nevertheless left a situation which must be regarded as a danger to public health and solved by compulsory annexation."

For reasons earlier noted, the Division was not required to consider or make a finding whether the existing sanitary district could adequately deal with the situation in order to conclude that a danger to public health existed and was subject to the provisions of ORS 222.850 to 222.915. There was no inadequacy in the findings.

Affirmed.