Argued and submitted March 3,
reversed and remanded July 23, 1980

## STATE ex rel RODRIGUEZ, et al,
*Plaintiffs,*
## RODRIGUEZ, et al,
*Petitioners,*

*v.*

## GEBBIE, et al,
*Respondents.*

## (CA 14230, SC 26607)

614 P2d 1144

See also 289 Or 409, 614 P2d 1148; 289 Or 393, 614 P2d 1141; 289 Or 417, 614 P2d 1151.

E. R. Bashaw and Steven P. Couch, Medford, argued the cause and filed briefs for petitioners.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, and Walter J. Barrie, Solicitor General, Salem.

B. J. Matzen, Klamath Falls, also argued the cause for respondents.

Before Denecke, Chief Justice, and Tongue, Howell, Lent and Peterson, Justices.

HOWELL, J.

## HOWELL, J.

This is the second of four related cases decided this date presenting questions concerning the compulsory annexation by the City of Klamath Falls (City) of a certain area adjacent to the City because a danger to public health exists due to sewage conditions. In this case, plaintiffs sought a writ of mandamus to compel defendants[1] to stay further compulsory annexation proceedings and to initiate review of plaintiffs' alternative plan of annexation.[2] The Court of Appeals affirmed a judgment by the circuit court dismissing plaintiffs' alternative writ of mandamus. 42 Or App 618, 602 P2d 282 (1979). We granted review.

In December, 1977, the Klamath County Board of Health, believing that a danger to public health existed within the subject territory, adopted a resolution and forwarded a copy to the Health Division, proposing that the territory be annexed to the City pursuant to ORS 222.850 to 222.915. Those statutes provide for city annexation of a territory,

"* * * without any vote in such territory or any consent by the owners of land therein if it is found, as provided in ORS 222.850 to 229.915 [sic], that a danger to public health exists because of conditions within the territory and that such conditions can be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities." ORS 222.855.

---

[1] Defendants in this case are both the assistant director of the Health Division and the Health Division.

[2] In the first case, *West Side Sanitary Dist. v. LCDC (# 26780)*, 289 Or 393, 614 P2d 1141 (1980), plaintiffs sought review by the Land Conservation and Development Commission (LCDC) of the Health Division order issued pursuant to ORS 222.880, finding that a health hazard exists. In the third case, *West Side Sanitary Dist. v. LCDC (# 26779)*, 289 Or 409, 614 P2d 1148 (1980), plaintiffs sought LCDC review of the Environmental Quality Commission (EQC) order issued pursuant to ORS 222.898, approving city plans to remove or alleviate the health hazard. In the fourth case, *West Side Sanitary Dist. v. Health Div.* 289 Or 417, 614 P2d 1151 (1980), plaintiffs sought judicial review in the Court of Appeals of the EQC order issued pursuant to ORS 222.898.

The Health Division, after holding public hearings in the subject territory pursuant to ORS 222.870, issued an order finding that a danger to public health exists in the territory because of conditions

"which are conducive to the propagation of communicable or contagious disease producing organisms * * * , conditions caused by inadequate installations for the disposal and treatment of sewage in the territory."

On November 1, 1978, pursuant to ORS 222.885, plaintiffs filed with the Health Division a petition allegedly signed by not less than 51 percent of the registered voters in the territory proposed to be annexed. The petition contained a proposal for an alternative plan of annexation to a sanitary district instead of to the City. According to ORS 222.885(2):

"Upon receipt of such petition, the division shall:

"(a)   Immediately forward copies of the petition to the city, and, except where the condition causing the danger to public health is impure or inadequate domestic water, to the [Environmental Quality Commission.]

"(b)   Order further proceedings on the findings filed under ORS 222.880 stayed pending the review permitted under ORS 222.890 and this section."

On January 25, 1979, after plaintiffs realized that the defendants had failed to act upon their petition, plaintiffs filed a petition for alternative writ of mandamus seeking to compel defendants to perform their duties under ORS 222.885(2). The circuit court allowed the alternative writ of mandamus.

Defendants filed an answer stating that they did not proceed under ORS 222.885(2) because the petition filed on November 1, 1978, was not signed by more than 51 percent of the registered voters within the territory proposed to be annexed, as required by ORS 222.885(1). Defendants explained that the determination of the insufficiency of the petition was based

upon certification of the Clerk of Klamath County. That certification stated:

"                OFFICE OF
"        CLERK OF KLAMATH COUNTY
"               Courthouse
"        Klamath Falls, Oregon 97601

"I HEREBY CERTIFY THAT ONE HUNDRED SIXTY ONE (161) SIGNATURES ON THE ENCLOSED PETITIONS ARE REGISTERED VOTERS IN KLAMATH COUNTY WESTSIDE SANITARY DISTRICT, WITHIN THE BOUNDARIES OF THE HEALTH HAZARD AREA, TO THE BEST OF MY KNOWLEDGE. THREE HUNDRED EIGHTY (380) PERSONS ARE REGISTERED VOTERS WITHIN SAID AREA ACCORDING TO CURRENT POLL BOOK INFORMATION. OF THE SIGNATURES WHICH APPEAR ON THE PETITIONS, SEVENTEEN (17) ARE NOT REGISTERED, TWO (2) ARE REGISTERED IN OTHER PRECINCTS, AND ONE (1) APPEARS TWICE, BUT WAS COUNTED ONLY ONCE.

" [Illegible] SIGNATURES REPRESENT 42.37 PERCENT OF THE 380 REGISTERED VOTERS IN THE AREA.

"WM. D. MILNE, COUNTY CLERK
"By   /s/ Phyllis Rutledge
                            DEPUTY"

Plaintiffs filed a reply which alleged that:

"Of the three hundred eighty (380) persons whose names appeared in the County Clerk's voter register to have residence addresses within the subject area, one hundred (100) were, and are, not voters in the area for the reason that they had died or otherwise departed and lived elsewhere than within the area as of November 1, 1978, and not more than two hundred eighty (280) persons (who) thus appeared on the voter's register with addresses in the subject area were registered voters therein. Of the said two hundred eighty (280), not less than one hundred sixty-one

(161) signed the petition alleged in the writ, and thus constituted not less than fifty-one percent (51%) of the registered voters in the subject area."

Defendants moved for judgment on the pleadings and filed a memorandum in which they argued that ORS 222.885(1) "does not require a showing as to the propriety of the registrations but rather requires only a percentage showing of the registrants. The voter register is the basis for determining that."

The circuit court granted the defendants' motion for judgment on the pleadings, explaining that "ORS 222.885(1) is a simple administerial test and does not allow going behind the registration record of the County Clerk."

The Court of Appeals affirmed, citing its decision in *West Side Sanitary Dist. v. Health Div.,* 42 Or App 755, 601 P2d 858 (1979). In that decision the court had held that the term "registered voters," as used in ORS 222.885, does not refer to those persons who are both currently registered *and* qualified to vote in the area, but refers only to the names appearing on the county's registration list. The court agreed with defendants that they were entitled to rely on the presumption that the county clerk maintains a current voter registration list.

ORS 222.885(1) provides:

"At any time within 30 days after the assistant director under ORS 222.880 finds that conditions dangerous to public health exist, a petition, *signed by not less than 51 percent of the registered voters in the territory proposed to be annexed,* may be filed with the division. Such petition shall suggest an alternative plan to annexation to the city for removal or alleviation of the conditions dangerous to public health. *The petition shall state the intent of the residents* to seek annexation to an existing sanitary authority, county service district or other special district authorized by law to provide facilities necessary to remove or alleviate the dangerous conditions. * * * " (Emphasis added.)

Under the general annexation statutes, ORS 222.111 to 222.750, annexation of territory to a city typically requires, among other things, either approval from a majority of "the registered voters" of the territory proposed for annexation (ORS 222.111(3)) or consent from more than half of the owners of land in the territory, who also own more than half of the land in the territory and of real property therein representing more than half of the assessed value of all real property in the territory (ORS 222.120(2); 222.170).[3]

The requirement that registered voters in the territory vote on a question of general annexation reflects a legislative concern that these persons have some control over the decisions that will affect their

---

[3] The statutes regarding the creation of an incorporated city from adjoining or nonadjoining incorporated cities require the approval of the "legal voters" of each incorporated city. ORS 222.250. And the statutes regarding merger of cities and municipal corporations require authorization from a majority of the "electors" of the two cities or municipal corporations affected. ORS 222.610. Consent of those in the territory to be annexed is not required if the territory is not an incorporated city but is surrounded by the annexing city. ORS 222.750. Consent is also not required under ORS 222.850 to 222.915.

The state legislature's methods for city annexation of new territory date back to Or Laws 1893, pp 120-21, which provided, among other requirements, that the city submit the question of annexation "to the electors residing in the territory proposed * * * to be annexed * * *." *Cf. Thurber v. McMinnville,* 63 Or 410, 416-17, 128 P 43 (1912).

In *Landess v. City of Cottage Grove,* 64 Or 155, 157, 129 P 537 (1913), we explained that a city must obtain "the approval of the *legal voters* residing within the territory to be annexed." (Emphasis added.) *See also Couch v. Marvin,* 67 Or 341, 343, 136 P 6 (1913). The term "legal voters" used in these decisions must be compared to the term "registered voters." In *Roesch v. Henry,* 54 Or 230, 235, 103 P 439 (1909), in construing a local option law regarding intoxicating liquors, we held that by the use of the terms "legal voters" and "registered voters," the statute permitted only qualified or legal voters whose signatures also appear on the registration books to petition for a local option election.

The annexation statute was amended in 1949 to require a city to submit the question of annexation "to the registered voters residing in the territory proposed to be annexed * * *." Or Laws 1949, ch 210, § 1 (amending OCLA § 95-901). The term "registered voters" has appeared in the general annexation statutes (ORS 222.111 to 222.750) ever since, and was used in ORS 222.885 when the compulsory city annexation statutes (ORS 222.850 to 222.915) were adopted in 1967. *See* Or Laws 1967, ch 624, § 8a.

property and their political organization. This concern is also reflected in compulsory annexations in ORS 222.885. Even though, under the compulsory city annexation statutes, a city is not required to submit the question of annexation to the registered voters of the territory, ORS 222.885 provides these registered voters with a method of avoiding city annexation by submitting to the Health Division a petition stating "the intent of the *residents* to seek annexation" to a different authority that will provide the facilities necessary to remove the danger to public health.

We believe that the legislature, by using both the terms "registered voters" and "residents" in ORS 222.885(1), intended that only those voters *registered to vote and resident* in the territory be considered in determining whether the petition meets the 51 percent requirement. ORS 222.885(1) specifically requires the petition to represent the intent of the residents. If the defendants are correct—that the term "registered voters" refers only to persons on the registration list and doesn't require those persons to currently reside in the territory—then the requirement that the petition state the intentions of residents may be ignored. According to the legal analysis of the defendants, the following illogical case would be perfectly legal: If, for example, the registration list showed 380 persons and 200 of them no longer resided in the territory, a petition signed by every one of the remaining 180 residents would not satisfy ORS 222.885(1). Indeed, in such a case, no petition could satisfy ORS 222.885(1). The terms "registered voters in the territory" and "intent of the residents" in ORS 222.885(1) must therefore refer to registered voters who are residents of the territory at the time the petition is filed with the Health Division.

The trial court entered a judgment on the pleadings in favor of defendants because they presented evidence as to the percentage of *registered* voters in the territory who signed the petition. Defendants did not consider, however, evidence as to the total

number of *registered and resident* voters in the territory at the time of the filing of the petition and evidence of the percentage of registered and resident voters who signed the petition. Therefore defendants failed to show cause why the petition for an alternative plan failed to qualify under ORS 222.885(1). Judgment on the pleadings was improperly granted and the alternative writ of mandamus was improperly dismissed.

We remand this case to the trial court with the following directions. Because ORS 222.885(1) contemplates that defendants will make a finding as to whether petitions filed under that statute satisfy the 51 percent requirement, the trial court should issue a peremptory writ of mandamus directing defendants to examine evidence and make a formal agency determination as to whether the petition in the instant case satisfied the 51 percent requirement. The defendants are not required to poll all persons in the territory to determine the total number of registered voters who are current residents. Any certification by the county clerk is not conclusive, and defendants must permit petitioners the opportunity to present their own evidence as to the number of registered and resident voters in the territory, including evidence challenging the county clerk's certification. After a hearing, defendants should issue an order determining whether the petition satisfies ORS 222.885(1).

The opinion of the Court of Appeals is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.