HERBERT A. RICE, Atty.-Gen., *ex rel.*, *vs.* TOWN COUNCIL
OF TOWN OF WESTERLY.

JANUARY 6, 1912.

PRESENT: Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1)  Certiorari.*

As *certiorari* appears to be the only proceeding in which the court can exer-
cise its final revisory jurisdiction upon the questions of law involved in the
action of a town council in counting ballots cast at an election upon the
question of granting licenses for the sale of intoxicating liquors, the court
is not restricted to errors alleged in the petition, but will consider any
substantial error, called to its attention and involved in the record.

*(2)  Certiorari.*

Although the court has jurisdiction upon *certiorari*, to review questions of
law only, whether the marks placed upon a ballot by a voter conform to
the statutory requirements for a legal ballot is a question of law rather than
of fact and is properly reviewed in *certiorari*.

*(3)  Elections.  Ballots.*

Under Gen. Laws 1909, cap. 11 § 46,, providing that no voter shall place any
mark upon his ballot by which it may afterwards be identified as the one
voted by him and that one line crossing another at any angle within the
circle or any voting-square or at the right of any name, shall be deemed a
valid voting-mark, if a voter places upon his ballot a mark, connected or
unconnected with the voting-mark, which appears to have been intentionally
made and one which may be a means of identification, the ballot is de-
fective, *but,* where upon inspection it appears probable that the voter ac-
cidentally has made a mark in connection with the cross, not of a kind
likely to have been used for the purpose of identification, and its presence
is consistent with an honest intention on his part, a reasonable construction
of the statute, each case being determined after an examination of the par-
ticular mark, requires that the ballot should be considered valid.

*(4)  Elections.  Ballots.*

Under the provisions of this statute, ballots where the voting-mark contained
an additional line, either a faint line connecting the end of one of the lines
of the cross with the end of the other line or a mark such as would be made
if the pencil touched the paper in passing from the marking of one line to
the other or in an attempt to retrace one of the lines or such as might have
been made unintentionally through defective eyesight or unskillful use of
the pencil, the probability being that the marks were inadvertently made,
the ballots were properly counted.

*(5)  Elections.  Ballots.  "Y" Marks.*

Under the provisions of this statute, a ballot where the mark was made by
a line slightly bent crossed by another line which did not extend to the same

length as the first, but both lines clearly crossing one another, is properly counted.

*(6)   Elections.   Ballots.*

Under the provisions of this section, a ballot marked with a cross to the right of the word "No" which was printed in the instructions at the top of the ballot, and also marked with a cross placed upon the word "No," after the question submitted, and also marked with a cross in the square at the right of the word "No," was properly rejected as containing distinguishing marks.

*(7)   Elections.   Ballots.   Distinguishing Marks.*

A voting mark made with ink amounts to a distinguishing mark and ballots so marked are properly rejected.

*(8)   Elections.   Ballots.*

Under the provisions of this section, a ballot marked with a symbol, which appears to have been made in an unskillful attempt to retrace the two lines of the cross and not to have been intended as a distinguishing mark was properly counted.

*(9)   Elections.   Ballots.*

Under the provisions of this section a ballot marked with a symbol made by drawing four lines crossing each other at a common point and then nearly obliterating the figure with a number of somewhat circular lines, was invalid as containing a distinguishing mark.

*(10)   Elections.   Ballots.*

Under the provisions of this section, a ballot marked by three lines crossing each other at a common point, the symbol being apparently the deliberate intention of the voter, was invalid as containing a distinguishing mark.

*(11)   Elections.   Ballots.*

Where at an election upon the question of granting licenses for the sale of liquor, a ballot blank upon its face was given a voter who wrote the word "yes" upon it, the ballot should have been rejected, since under the provisions of Gen. Laws, 1909, cap. 11, § 46, it is only in case no ballots printed as required by law are provided that voters may use other ballots and such proper ballots were in fact at the polls and could have been obtained by the voter.

*(12)   Elections.   Ballots.*

Under the provisions of this section a ballot with a number of lines, drawn close together and having the appearance of one broad line, marked across the word "yes," and with a cross placed in the square to the right of the word "no," was invalid as containing a distinguishing mark.

*(13)   Elections.   Intoxicating Liquors.   Licenses.*

*Semble:*   Under the provisions of Gen. Laws, 1909, cap. 123, § 4, where the electors have voted in favor of granting licenses for the sale of intoxicating liquor, licenses shall continue to be granted until at some subsequent elec-

tion the electors shall vote against the granting of such licenses. Hence, where the vote had been in favor of granting licenses at a prior election and on the following election the vote upon that question was a tie, licenses were properly granted for the ensuing year.

CERTIORARI. Heard and record certified on writ, quashed.

SWEETLAND, J.    This is a petition for a writ of *certiorari* brought in the name of the Attorney-General at the relation of Harvey C. Perry, a citizen and taxpayer of the town of Westerly, against the town council of said town.    The essential allegations of the petition are that at an election held in said town on the fifth day of November, 1912, the question, "Will this town grant licenses for the sale of intoxicating liquors?" was voted upon by ballot according to law; that on the sixth day of November, 1912, the said town council counted the ballots upon said question cast at said election; that said town council, as a part of its proceedings, counted in favor of licenses three defective ballots, and failed to count and rejected, as defective, two legal and valid ballots cast at said election against the granting of licenses; and that said council announced and recorded in the record of its proceedings the result of said counting to be that a majority of two votes had been cast at said election in favor of granting licenses for the sale of intoxicating liquors in said town.    The writ was duly issued and returned.    The record of said proceedings of the town council has been certified to us by the town clerk of said town, and all the ballots cast at said election, upon said question, have been transmitted to us.    Said record shows the action taken by said council upon objections made before it to the counting and rejection of certain of said ballots.    Such objections, according to the record, were made by   counsel who represented persons favorable and by counsel who represented persons opposed to the granting of licenses for the sale of intoxicating liquors in said town.    Said record also sets forth as follows:    "Upon the completion of the counting of the ballots cast in the

First Representative District, it was voted: That 327 electors had voted 'Yes,' and 272 electors had voted 'No,' in said First District." . . . "Upon the completion of the counting of the ballots cast in the Second Representative District, it was voted: That 331 electors had voted 'Yes,' and 384 electors had voted 'No,' in said Second District, making the vote for the whole town 'Yes,' 658; 'No,' 656. *Voted:* That this Town Council does hereby declare that the Town of Westerly did on the 5th day of November, 1912, vote in favor of the granting of licenses for the sale of intoxicating liquors in said Town."

At the hearing before us counsel, representing persons who were in favor of granting licenses in said town, was permitted to appear and to take part. At said hearing it was claimed that certain defective ballots, some for and others against license, were counted by the town council; and that certain other ballots were held to be defective and were rejected by said town council, although said ballots were legally sufficient and should have been counted. The ballots, in regard to which the action of the town council has been questioned, have been produced before us and we have reviewed the determination of the council upon them. In a number of instances the objection made (1) at the hearing in this court was not included in the statement of errors appearing in the petition for the writ of *certiorari;* and in some instances the objection was made by the representative of persons in favor of granting licenses in said town. We have permitted the hearing upon this writ of *certiorari* to take so broad a scope, because no other remedy is provided to review the proceedings of the town council in this regard. *Certiorari* appears to be the appropriate proceeding in which this court may exercise its final revisory jurisdiction upon the questions of law involved in said proceedings before the town council. In reviewing such proceedings, upon this matter involving public interests, we are not restricted to errors alleged in the petition. We will consider any substantial error, in-

volved in the record and called to our attention, in order that the will of the people, as legally expressed, may not be defeated, as perhaps it might be, if we merely considered and passed upon the questions raised by the petition.

(2)     This court has frequently said that *certiorari* does not lie to review findings of fact and the constitutional provision, giving to this court revisory and appellate jurisdiction to review the proceedings of inferior tribunals, by its terms only provides for a review of questions of law and equity. The matters now before us relate wholly to the manner in which the ballots in question were marked by the voters. Whether the marks placed upon his ballot by a voter conform to the statutory requirements for a legal ballot is a question of law rather than of fact, and is one proper to be reviewed in this proceeding.

We will now consider the several objections raised to the action of said council in counting and rejecting ballots.

Chapter 11, § 46, Gen. Laws, 1909, among other things, provides as follows: "no voter shall place any mark upon his ballot by which it may be afterwards identified as the
(3)  one voted by him. One line crossing another at any angle within the circle or any voting-square, or at the right of any name, shall be deemed a valid voting-mark."

Except in the two instances which will be considered later, the face of the official ballot blank furnished to the voters at said election by the election officers was in the following form:

To vote in favor of license, mark a cross (X) in the square at the right of the word "Yes."

To vote against license, mark a cross (X) in the square at the right of the word "No."

| Will this town grant licenses for the sale of intoxicating liquors? | YES | |
| :-- | :-- | :-- |
| | NO | |

The petitioner objects to the action of the council in counting in favor of license five ballots, each of which have been marked by the voter in the square at the right of the word "yes," but in such voting mark other lines appear besides the two lines crossing each other. Each of these five marks differs from the others, but they all have been referred to at the hearing as "triangles." The additional line in one case is a faint line connecting an end of one of the lines forming the cross with an end of the other line. It is such a mark as would be made if the voter's pencil lightly touched the paper in passing from the marking of one line to the marking of the other. In each of the other so-called triangles the additional line is such an one as might be made by a voter in an attempt to retrace or make plainer one of the lines of the cross, or is such a mark as might be made unintentionally by a person of defective eyesight or by a person unaccustomed to the use of a pencil. The petitioner claims that these ballots are defective because the voter has not made the vote mark required by statute and also because the additional line appearing in each ballot constitutes a distinguishing mark. This court has frequently held that to make his ballot effective the voter must use the voting-mark prescribed by statute, *i. e.*, one line crossing another at any angle. No vote should be counted unless the voter has conformed to that requirement. The statutory requirement is equally imperative that the voter shall place no mark upon his ballot by which it may be identified afterwards. If the voter places upon his ballot a mark, unconnected with the voting-mark, which additional mark appears to have been knowingly and intentionally placed, it will render his ballot defective, as bearing a distinguishing mark. So also if in connection with the voting-mark itself the voter makes an additional mark which appears to have been intentionally made and to be one which may be a means of identification, such additional mark should be held to be a distinguishing mark and the ballot is defective; but in our opinion a different

question is presented when, upon an inspection of the ballot it appears as most probable that the voter in making the cross required by statute, or in addition to said cross, clumsily or accidentally has made some other mark in connection with said cross; but a mark of such a nature as to raise grave doubt of any improper intention on the voter's part. From old age, defective eyesight, a clumsy or a trembling hand, lack of skill in the use of a pencil or from other cause some voters are much less expert than others in marking their ballots. Each case must be determined after an examination of the particular mark objected to; but it may be stated, as a general rule, that if the additional mark or marks in question are not of a kind likely to be used for the purpose of identification, and appear to have been made accidentally, or to have been made by reason of unskillfulness in the use of a pencil or in the making of a cross, and their presence upon the ballot appears consistent with an honest intention in the voter, then a reasonable construction of the statute requires that the voter should not be disfranchised for this reason, that his ballot should (4) be considered valid, and should be counted. As to the five ballots now under consideration, tested by the rules which we have stated, we find a strong probability that the voters intended to make merely the voting-mark prescribed by the statute, that the slight additional marks were inadvertently made; that they do not amount to distinguishing marks, and that the said ballots were properly counted by the town council.

The petitioner objects to the counting of a ballot marked in the square after the word "yes," with a mark which at (5) the hearing was called a "Y" mark. This mark is made by a line slightly bent crossed by another line which does not extend to the same length as the first. The lines clearly cross and the voter has complied with the statute. This ballot was properly counted. *Clarke* v. *Joslin,* 34 R. I. 376.

The petitioner objects to the rejection of a ballot as defective which was marked with a cross to the right of the

word "No," which is printed in the second line of the instruction to voters at the top of the face of the ballot, also was marked with a cross placed upon the word "No" after the question submitted, and also was marked with a cross (6) in the square at the right of the word "No." The cross at the right of the word "No" in the instruction and the cross placed upon the word "No" after the question submitted were distinguishing marks under the statute and the ballot was properly considered defective and rejected by the town council.

The petitioner objects to the action of the town council in rejecting ballots marked with ink. Our attention has been called to three ballots marked with ink which were held to be defective ballots by the town council. Two were ballots against license and one was a ballot in favor of license. We think that this action of the town council was proper. Our statute regulating elections by secret ballot does not in terms provide that the elector shall mark his ballot with a pencil and with a pencil alone. Sec. 41 of (7) Chap. 11, Gen. Laws, 1909, provides: "Every voting shelf or compartment shall be kept provided, by the city, town, ward and district clerks with proper pencils for marking the ballots, which pencils shall be by the supervisors kept in condition for use; but all pencils furnished for said purpose in any election shall, in each voting district, be such as will mark a uniform color, and in marking his ballot no voter shall use a pencil marking a different color."

The clear intent of this section is to guard against the identification of a voter's ballot by means of the medium used by him in marking his ballot. A ballot marked with ink is as readily distinguishable from those marked with the pencils provided by the clerk in the voting compartments as would be a ballot marked with a pencil of a different color. A voting mark made in ink amounts to a distinguishing mark placed upon the ballot. The ballots in question were properly rejected.

(8)    The petitioner objects to the action of the town council in counting in favor of license three ballots, each of which

is marked with a symbol in the square to the right of the word "yes" following the question submitted; which symbols have been referred to at the hearing as asterisks. One of these so-called asterisks has much the same characteristics as the triangles above referred to, and appears to have been made in an unskillful attempt to retrace the two lines of the cross, and not to have been intended as a distinguishing mark. From its appearance the strong probability is that the mark was made by the voter in an endeavor to make the symbol required by statute and only that. In our opinion this ballot was properly counted by the town council. Another of the so-called asterisks appears to have been made by drawing four lines crossing each other at or near a common point and then by covering and nearly obliterating the figure so made with a number (9) of more or less circular lines. This figure does not appear to have been made by the voter in an honest attempt to mark his ballot as required by law. This ballot should have been rejected. The action of the town council upon this ballot was erroneous. Another of the so-called asterisks was made by three lines which cross each other at a common point. Neither of the three lines seems to have been made inadvertently, but to have been drawn by a (10) person accustomed to the use of a pencil. It appears to have been the deliberate intention of the voter to mark his ballot with a symbol other than that required by the statute. The action of the town council in counting this ballot was erroneous.

(11)    In some manner two of the ballot blanks prepared for said election came from the printer entirely blank upon their faces, although they each had the official endorsement printed upon the back. Each of these ballots was given by an election official to a voter, and was marked by said voter and deposited in the ballot box. Upon one of these ballots the voter wrote the word "yes," without more, on the face of the ballot, and upon the other ballot the voter wrote the word "yes," without more, upon the back. The town

council rejected as defective the ballot having "yes" written upon its back and counted in favor of license the ballot having "yes" written upon its face. Neither of these ballots should have been counted. Upon unfolding the ballot delivered to him and finding it blank, the voter should have returned it to the election supervisor and received one in proper form. Sec. 24, Chap. 11, Gen. Laws, 1909, provides that whenever at elections by secret ballot a question is submitted to the electors of a city or town "The ballot shall be so printed as to give to each voter an opportunity to designate by a cross-mark (X) in a square his answer to the question submitted." Such ballots were provided at the polling places upon this election, although in the two instances now being considered, such ballots were not delivered to the voter. In regard to the ballots in question the intention of the voter in either case is not expressed and can only be conjectured; but if his purpose had been clearly shown by more extended writing upon the ballot, the ballot should not be counted; for it is only in case no ballots, printed as required by law, are provided at any voting place or in case no such ballots are at the polls and ready for use of voters that voters are permitted to use other ballots. Sec. 46, Chap. 11, Gen. Laws, 1909, *In re Hammond, Petitioner*, 24 R. I. 269. The action of the town council in counting in favor of license the ballot with the word "yes" written upon its face was erroneous.

(12)     Our attention has been called to the action of the town council in counting as against license a ballot on which a number of lines, drawn close together and having the appearance of one broad line, have been marked across the word "yes" printed after the question submitted, and on which also a cross has been placed in the square to the right of the word "No." Objection to this action of the town council was made before us at the hearing. We think that this action of the council was erroneous. The lines drawn across the word "yes" amounted to a distinguishing mark; the ballot should have been rejected as defective.

(13)   We therefore find that three ballots counted in favor of license and one ballot counted as against license were improperly so counted by the town council.   As thus corrected the vote of the town at said election upon the question:  "Will this town grant licenses for the sale of intoxicating liquors," was 655 votes in the affirmative and 655 votes in the negative.   The record of the town council certified to us upon this writ should be quashed.

At the hearing before us it appeared that immediately following said proceedings in the town council licenses for the sale of intoxicating liquors were granted in the town of Westerly.   Although admittedly it is not a question before us upon this petition and writ, all parties have urgently requested this court to give its opinion upon the status of the licenses so granted, if we should find said vote to be a tie.   In view of the public interests involved we will pass upon the question.

Sec. 4, Chap. 123, Gen. Laws, 1909, among other things provides:  "Sec. 4.   The electors of the several cities and towns who are qualified to vote in the election of all general officers shall, at each election of general officers, cast their ballots for or against the granting of licenses for the sale of intoxicating liquors pursuant to this chapter.   If a majority of the ballots so cast at any such election be against the granting of such licenses, no license under the provision of this chapter shall be granted in such city or town during the twelve calendar months next after such election, nor until such city or town shall vote at some subsequent election of general officers to grant such licenses."  . . . "But if the majority of the ballots cast at any such election shall be for the granting of such licenses, then licenses under the provision of this chapter shall be granted in such city or town during the twelve calendar months next after such election and until such city or town shall vote at some subsequent election of general officers not to grant such licenses."   The intent of this section is that licenses for the sale of intoxicating liquors shall not be granted in any

city or town of the state until at some election of general officers a majority of the electors of that city or town, qualified to vote in such election, shall vote in favor of granting such licenses. When in such city or town a majority of said electors have so voted, then licenses shall continue to be granted in that city or town until at some subsequent election of general officers a majority of said electors shall vote against the granting of such licenses.

In November, 1911, at the election for general officers in the town of Westerly a majority of the ballots cast at said election upon the question of granting licenses for the sale of intoxicating liquors in said town, were cast in favor of the granting of such licenses. Under the provisions of said Section 4, after November, 1911, licenses for the sale of intoxicating liquor shall be granted in the town of Westerly until a majority of the electors of said town shall vote at some subsequent election of general officers not to grant such licenses. As yet a majority of said electors have not so voted. It therefore appears that the licenses in regard to the validity of which we are asked to give an opinion were properly granted.

*Samuel H. Davis, William B. Greenough, Nathan W. Littlefield,* for petitioners.

*Harry B. Agard, John W. Sweeney, Mumford, Huddy, and Emerson,* for respondents.

*Charles C. Mumford,* of counsel.