ANDREW HARKNESS *vs.* BOARD OF CANVASSERS OF CITY OF CENTRAL FALLS.

DECEMBER 18, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Elections.  Ballots.*

Whether the marks placed upon a ballot by a voter conform to the statutory requirements for a legal ballot is a question of law rather than of fact and is properly reviewable in *certiorari*.

*(2)  Elections.  Ballots.  Distinguishing Marks.*

A ballot with crosses placed in the squares to the right of the names of all but one of the candidates in a party column, the marking being uniform in color with the crosses placed upon the other ballots at an election, but containing in the circle at the top of the column a blotch of another color nearly filling the circle, in which blotch were two crosses of the same color, should have been rejected as containing a distinguishing mark.

*(3)  Elections.  Ballots.*

A ballot which is not marked in any circle under a party emblem, but marked with a cross in the square at the right of the candidate's name in two different columns, the candidate having been the nominee of two political parties for the same office, is a legal ballot.

*(4)  Elections.  Ballots.  Distinguishing Marks.*

Voting marks placed on a ballot in a manner permitted by statute, without proof of a corrupt intention in so doing, cannot be regarded as improper identifying marks.

CERTIORARI.    Heard on petition for writ and granted.

SWEETLAND, J.   This is a petition for a writ of *certiorari* to correct certain alleged errors in the record of the Board of Canvassers of the city of Central Falls in relation to the election of alderman from the fifth ward of said city for the term of two years, beginning January 4th, 1915.   The respondents have appeared to show cause why said writ should not be issued.

The essential allegations of the petition in substance are that at the election for the office of alderman from the fifth ward of said city, for said term, held on November 3, 1914, the petitioner was the candidate for said office of both the Democratic party and the Progressive party and as such candidate his name appeared on the official ballot in the Democratic column and also in the Progressive column; that at said election one John J. Standring was the candidate of the Republican party for said office and, as such candidate his name appeared on the official ballot in the Republican column; that on the day following said election the respondent Board of Canvassers counted the ballots given in at said election and erroneously declared and entered upon its record that said Standring had received at said election one hundred and twenty-one votes for said office, and that the petitioner had received at said election one hundred and eighteen votes for said office and that said Standring had been elected as such alderman for said term.   The petitioner further alleges in substance that said Board in counting said votes and in making its decision, declared and recorded as aforesaid, erroneously counted a vote for said Standring appearing upon a ballot which was defective because it bore a distinguishing mark, and that said Board erroneously rejected as defective four ballots upon each of which appeared a vote in favor of the petitioner for said office.

(1)  The ballots cast at said election have been introduced in evidence and we have examined them.   In *Rice* v. *Town Council of Westerly*, 35 R.I. 117, this court held that "whether the marks placed upon his ballot by a voter conform to the statutory requirements for a legal ballot is a question of

law rather than of fact" and is a question properly reviewable in *certiorari*.

We will consider first the ballot which contained on its face a vote for said Standring for said office, which vote the petitioner claims was erroneously counted in favor of said Standring by the respondents. The petitioner claims that said ballot was defective and should have been rejected because it bore a distinguishing mark. This ballot was marked with crosses each placed respectively in the squares to the right of the names of all but one of the candidates in the Republican column. These crosses appear to have been made with a lead pencil and are uniform in color with the crosses placed upon the other ballots cast at said election and presented in evidence before us. There also appears upon this ballot in the circle under the eagle at the top of the Republican column a blotch of purple color nearly filling said circle in which blotch of color are two crosses apparently made with purple ink or with a pencil of soft purple lead. Section 41 of Chapter 11, Gen. Laws, 1909, provides: "each voting shelf or compartment shall be kept provided, by the city, town, ward and district clerks, with proper pencils for marking the ballots, which pencils shall be by the supervisors kept in condition for use; but all pencils furnished for said purpose in any election shall, in each voting-district, be such as will mark a uniform color, and in marking his ballot no voter shall use a pencil marking a different color." In *Rice v. Town Council of Westerly,* 35 R. I. 117, referring to this provision, we have said: "The clear intent of this section is to guard against the identification of a voter's ballot by means of the medium used by him in marking his ballot." The purple blotch and the purple crosses in the circle on the ballot now being considered must be held to be distinguishing marks placed upon his ballot by the voter whereby it may be identified as the one voted by him. Said ballot should have been rejected by the respondents as defective. The vote for Standring appearing thereon was erroneously counted in his favor.

We will now consider the four other ballots which were rejected by the respondents as defective, and in regard to the rejection of which the petitioner here complains. Neither of these ballots was marked in either of the circles appearing under the party emblems thereon; but each was marked with a cross in the square at the right of the petitioner's name as a candidate for alderman in the Democratic column and also with a cross in the square at the right of the petitioner's name as a candidate for alderman in the Progressive column. In support of their action the respondents urge that such marking of the ballot is illegal, not being authorized by the statute, and further that such a method of marking the ballot constitutes a distinguishing mark. The respondents rely somewhat upon the authority of *Thorpe* v. *Fales*, 33 R. I. 394, to establish the illegality of these ballots. In that case the name of the petitioner Thorpe appeared upon the official ballots, then in question, as a candidate for the office of town councilman in the Democratic column and also in the column headed "Progressive Citizens Nomination Papers." Upon each of the three ballots under consideration in that case the voter had marked a cross in the circle under the emblem at the top of the Democratic column and also a cross in the circle at the top of the column headed "Progressive Citizens Nomination Papers." Relying upon the explicit language of the statute this court held in that case that said ballots were properly rejected. The court said: "Sec. 43, cap. 11, Gen. Laws, 1909, provides *inter alia* as follows: 'When a voter has placed a cross (X) in any one circle, *and has not made any mark in any other circle*, such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed except for those candidates whose names have been cancelled.' The inference is plain that a cross in a given circle on the ballot is nullified by a cross in another circle on the same ballot and the ballot must be rejected." *Thorpe* v. *Fales* so far as it is relied upon by the respondents relates to voting marks placed in more than one of the circles above the columns of

party candidates on a ballot and is not an authority upon the question now before us.   Neither of the four voters who cast the ballots now under consideration, marked his ballot in either of the circles over the party designation; and the statutory provisions regulating voting for groups of candidates do not affect either of these ballots.   Sec. 43, Chap. 11, Gen. Laws, 1909, among other things provides as follows: "The voter may omit to mark in any circle and may vote for the candidate of his choice by making a cross (X) in the square opposite their names  .  .  .   and such votes shall be counted."   The language of this provision is not so explicit as to require that the voter shall vote for the candidate of his choice for a certain office by making a cross in every square opposite the name of such candidate, when said name appears upon the official ballot more than once among the names of candidates for said office.   We think in such circumstances it would be a reasonable construction of this provision to hold that the voter has voted for a candidate when he has made a cross in one square opposite the name of such candidate.   The question then arises, although to effect the voter's intention it may be unnecessary to make a cross in every square opposite the name of the candidate of the voter's choice, has the voter rendered his ballot defective by making a cross in more than one of the squares opposite such name, when such name appears upon the official ballot more than once among the names of candidates for said office?   It cannot be said that such action creates any uncertainty as to the voter's intention.   Although the candidate's names, printed upon the official ballots, are placed there as the choice of the different political parties or of groups of citizens expressed upon nomination papers, the direction of the statute is that the voter shall vote for the candidate of his choice, not for a candidate as the nominee of one of the political parties or of other groups of citizens. The voter surely cannot be said to have less clearly indicated his personal choice of a candidate when he has expressed it more than once.

This court has approved of the doctrine urged upon our attention by the respondents: that "as the legislature has required the elector to express his intention by certain well defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election, or by the courts, as to his intention. The legislature has clearly and precisely defined the manner in which the elector may designate the candidates for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the electors complying with the rules. In our view, it ·is neither the duty of the judges of election nor the courts to fritter away the benefits of the system by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the legislature." *Gainer* v. *Dunn*, 29 R. I. 239. This branch of the matter before us, however, does not present the case of a voter who has attempted to express his intention in a manner contrary to that clearly and precisely defined by the legislature. The legislature has not explicitly prescribed what the voter shall do when he finds the name of the candidate of his choice for a certain office printed in two or more places upon the official ballot. It may be said under a liberal construction of the statute that the provision which permits the voter to vote for the candidate of his choice for a certain office by making a cross in the square opposite such candidate's name, has been literally observed when the voter makes a cross opposite such candidate's name wherever it appears upon the official ballot; or it may be said as it was said by the Supreme Court of Michigan in *Attorney General* v. *Glaser*, 102 Mich. 396, in its first opinion in said case construing a statutory provision similar to our own: "Applying the rule of construction which we think should obtain in this case, there can be no doubt that the relator was elected. A large number of the defective ballots had a cross under the party name of the Republican and also of

the Citizen's ticket. The tickets were, it is true, identical; but a single mark constituted a vote, and the second mark was wholly unnecessary and inappropriate to register the voter's intent,—as much so as would have been any mark placed under the Democratic ticket. Such mark might have been an agreed means for identification of the ballot, and must be held to have been a distinguishing mark."

In case the meaning of any of the provisions of our system of elections by secret ballot is not plain this court inclines to a reasonable and liberal construction of the doubtful provision in favor of the voter, when such manner of construction will give effect to the intention of the voter and is not in conflict with the fundamental design of the system, to provide for a secret ballot and to prevent corrupt practices in elections. In *Attorney General* v. *Glaser (supra)*, after rehearing, the court said, 102 Mich. 405, that it had reached its former conclusion with some hesitancy, that it had been since informed that a contrary practical construction had been given by the law department of the state previous to the election and that "in view of this practical construction, it should be held that the class of ballots above referred to are not illegal. While it may be said that the placing of the cross opposite the name of the candidate on each of the two tickets was unnecessary, neither, by itself, was inappropriate to express the voter's intent and we feel constrained to hold that the rule which was laid down in our prior opinion was too rigid."

(4) We are of the opinion that under a fair construction of our statute the four ballots now being considered should not be held to have been marked contrary to the provisions of the statute. We find them to be legal ballots; and the votes thereon in favor of the petitioner should have been counted for him. As we have reached the conclusion that the method of marking the four ballots now being considered is permissible under the statute, the question does not arise as to whether such marks amount to distinguishing marks placed upon his ballot by the voter whereby it afterwards

may be identified as the one voted by him. Voting marks placed on a ballot in a manner permitted by the statute, without proof of a corrupt intention in so doing, can not be regarded as improper identifying marks.

The writ of *certiorari* may issue in accordance with the prayer of the petition, returnable December 21st, 1914, at ten o'clock A. M.

*Peter C. Cannon, Comstock & Canning, Patrick P. Curran,* for petitioner.

*Wilson, Gardner & Churchill, John A. Butman,* for respondents.