Anthony J. BUCCI et al.

v.

Ralph R. FARGNOLI et al.

No. 81–447–M.P.

Supreme Court of Rhode Island.

Dec. 17, 1981.

William Y. Chaika, Cranston, for petitioners.

Joseph A. Rotella, Asst. City Sol., Providence, for respondents.

## OPINION

KELLEHER, Justice.

This is a petition in equity in the nature of quo warranto wherein the petitioners, Anthony J. Bucci, Harry A. Johnson, and Thomas F. O'Connor, claim to be duly elected members of a committee that is charged with the initial responsibility of redrawing the ward lines in the city of Providence. The petition seeks confirmation of their title and the ouster from the committee of the respondents, Ralph R. Fargnoli, Philip F. Almagno, and William J. Moise. The opinion that follows contains the rationale for an order entered in this controversy on October 23, 1981, in which we declared the respondents' election to be a nullity and mandated a new election.

In *Fargnoli v. Cianci*, R.I., 397 A.2d 68, 73 (1979), we once again stressed that a petition in equity in the nature of quo warranto affords a twofold remedy in that it provides for the ouster of a respondent from public office while affirming the petitioner's title to the office in dispute. Once this litigation was initiated, respondents immediately claimed that membership on the ward-alignment committee did not involve the holding of a public office; consequently, they asked that the quo warranto petition be dismissed. The soundness of this position must be reviewed by an examination of the pertinent portions of the Providence Home Rule Charter of 1980.

As noted in our October order, the Providence Home Rule Charter of 1980 requires the Providence City Council to elect a Committee on Ward Boundaries "[a]t its first meeting in September 1981, and its first meeting in September each tenth year thereafter * * *." The committee is charged with the responsibility of drawing up a plan for realigning the city's ward lines. The realignment comes about because of changes in the city's population which are revealed by each federal decennial census. The charter requires that the realignment project be completed no later than the first day of March of the following year.

The charter specifically stipulates that the committee shall be composed of five qualified municipal electors who may or may not be members of the city council. However, the charter expressly requires three of the five-member group to be elected by the council's "majority party" and the remaining two to be chosen by council members who are not members of the majority party. Once the committee has completed its deliberations, it must submit its redistricting plan to the council, which is then obligated to hold at least one public hearing before it takes action on the committee's recommendation. The charter makes it quite clear that the council can "adopt the plan as presented or with such amendments as it [the council] shall think proper."

Although there is a substantial difference of opinion about the specific attributes that must attach to an office before it assumes the character of a public office, in *City of Warwick v. Warwick Regular Firemen's*

*Association,* 106 R.I. 109, 115–16, 256 A.2d 206, 210 (1969), this court said that one indispensable attribute of any public office was the right of the incumbent to exercise some portion of the sovereign power of government free from the control of others. The Providence City Charter makes it quite clear that the ward-boundary-committee function is purely advisory. The committee is, as it were, a factfinding body whose information and suggestions are presented to the municipal legislature. The committee never gets close to the point where it engages in exercising any part of the sovereign power of government. Once the committee has concluded its deliberations, its plan and recommendations are presented to the council, which then takes over. The legislative body has the final say about where the lines will be located, provided, of course, that the council's end product manifests a desire to achieve, if possible, "equality of" ward populations, employment of "natural boundaries," and "inclusion of recognized neighborhoods within the wards," as well as "compactness and contiguousness of the territory of each ward."[1]

■ Since the committee members are not public officers, petitioners here could not prevail in their request for a writ of quo warranto. Having made this determination in October, the court recognized that it was confronted with an issue of pressing public interest which should be resolved with all possible dispatch, especially since the new charter calls for the completion of the committee's and the council's labor by March 1, 1982. Furthermore, the Providence 1980 charter was adopted by its citizens pursuant to sections 6 and 7 of article XXVIII of the amendments to the Rhode Island Constitution, and the General Assembly at its January 1981 session expressly validated the charter "[i]n all respects." *See* P.L.1981, ch. 37, § 1. Thus, the will of the people having been legally expressed, it may not be thwarted. *See Rice v. Town Council of Westerly,* 35 R.I. 117, 121, 85 A. 553, 554 (1912). Consequently, this court decided to do what it did in the *Fargnoli* case, where a

governmental impasse threatened to paralyze the operations of various vital municipal services. In *Fargnoli v. Cianci,* R.I., 397 A.2d at 73, we responded to the exigencies of the moment as we fashioned our own writ by considering a portion of a Superior Court complaint as being a petition in equity in the nature of quo warranto filed in this court pursuant to G.L.1956 (1969 Reenactment) § 10–14–1. This court cannot be divested of its constitutional and inherent powers to correct errors of law. Thus, when confronted with the ward-boundary-committee impasse, we once again decided to fashion our own remedy and, in doing so, have considered the petitioners' quo warranto request as being a petition for a common-law writ of certiorari.

■ We are well aware that as a general rule certiorari will not lie to review an exercise of purely legislative discretion. *Newport National Bank v. Hawksley,* 92 R.I. 433, 436, 169 A.2d 616, 618 (1961); *Lumb v. Zoning Board of Review of Bristol,* 91 R.I. 498, 504, 165 A.2d 504, 507 (1960); *Beauregard v. Town Council of South Kingstown,* 82 R.I. 244, 245, 107 A.2d 283, 283–84 (1954). However, here the charter, insofar as it relates to the ward-realignment committee, restricts legislative discretion in two respects. The members of the majority party can fill only three of the five committee positions. The remaining two positions must be filled only by the votes of those council members who have not aligned themselves with the Democratic Party. Those who voted in violation of the charter provisions have committed an error of law.

■ The records of the city clerk reveal that when the council met on the evening of September 3, 1981, all twenty-six members were present. Twenty-one of those present on that evening were listed on the meeting-docket as members of the Democratic Party. The clerk's records indicate that the Fargnoli-Almagno-Moise slate received fourteen votes, and the Bucci-Johnson-O'Connor slate garnered twelve votes.

---

1. *See* Providence City Charter of 1980, sec. 204(C).

Simple mathematics tells one that the respondents' margin of victory came about as a result of the votes of the five council members whose voting rights were limited by the charter to choosing the two so-called minority members of the ward-realignment committee. The September 3 election could not stand, and it was because of this that we issued our October 23, 1981 order.

Parenthetically, it should be noted that subsequent to the issuance of our order, the council at its November 5, 1981 meeting held an election at which the members of the majority party chose three members of the ward-boundary committee, and the remaining council members chose two members who, with the majority's three choices, make up the committee. The majority party's choice was the Bucci-Johnson-O'Connor slate.