[No. 2326½.  Decided February 1, 1897.]

THE STATE OF WASHINGTON, *on the Relation of Robert B. Mullen, Respondent*, v. THOMAS E. DOHERTY, *Appellant.*

QUO WARRANTO—JURY TRIAL—AMENDMENT OF CITY CHARTER—NOTICE OF ELECTION—RECORD OF ADOPTION—APPOINTMENT OF OFFICERS.

The constitutional provision declaring that "the right of trial by jury shall remain inviolate" has reference to the right to jury trial as it existed in the territory at the time when the constitution was adopted.

As the right to trial by jury in *quo warranto* proceedings did not exist at common law at the date of the early settlement of this country, nor was authorized by statute at the date of the adoption of the state constitution, the constitutional provision, that "the right of trial by jury shall remain inviolate," is inapplicable in proceedings to try the right to a public office.

The failure of a city clerk to post in each election precinct of the city notice of a proposed election for the adoption of charter amendments, as required by statute and ordinance, which were passed pursuant to a constitutional provision in regard to giving such notice but without specifying the manner thereof, will not invalidate the election, when it appears that notice had been published in all the daily papers of the city the requisite length of time, that the election was a matter of public notoriety and had been discussed by the people generally in their homes, and the result of the votes cast showed that the great body of the electors had expressed their will upon the adoption or rejection of the amendments. (DUNBAR, J., dissents).

The appointment by the mayor of a commissioner of public works is not subject to confirmation or rejection by the city council, when the charter expressly provides that the person appointed by the mayor "shall hold office at the pleasure of the appointing power."

The omission of the city clerk to record the amendments to the city charter, adopted by vote of the electors of the city, would not invalidate the amendments themselves, but merely affect the manner of their proof.

Notice of a proposed election for the submission of charter amendments sufficiently specifies the object for which the election was called, even if it does not set out the proposed amendments, when it refers to the ordinance containing the proposed amendments as the basis for the giving of the election notice.

Appeal from Superior Court, Pierce County.—Hon. W. H. PRITCHARD, Judge.    Reversed.

*Govnor Teats* ( *W. C. Sharpstein, amicus curiae*), for appellant.

*Claypool, Cushman & Cushman,* and *Doolittle & Fogg,* for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was instituted in the superior court of Pierce county to oust the appellant

Doherty from the office of commissioner of public works of the city of Tacoma. The relator, Mullen, was a member of the board of public works appointed under the provisions of the city charter of the city of Tacoma, and the appellant Doherty claims the office by virtue of certain amendments to the city charter which he alleges were adopted by the legal voters of the city at an election held on April 7, 1896. Under the provisions of these alleged amendments, Doherty claims to have been duly appointed as commissioner of public works. The contention of the relator is that these amendments were never legally adopted and that they are inoperative and void. Issue of fact was joined and the cause tried to the court. Findings of fact and conclusions were duly entered, upon which judgment was entered for the relator, from which judgment Doherty has appealed.

The first point urged in the brief of the appellant is that the court erred in overruling appellant's demand for a jury trial. The contention is that §§ 32, 33 and 34 of the act of March 15, 1893 (Session Laws 1893, p. 416), are unconstitutional in that they abridge the right to a trial by jury. The provision of the constitution relied upon is found in § 21, art. 1, of the declaration of rights, which, among other things, provides that " the right of trial by jury shall remain inviolate." The decisions bearing upon this branch of the case are conflicting, but an examination of the numerous cases cited, and others not referred to by counsel, has satisfied us that the great weight of authority in this country is against the position contended for by appellant's counsel. The effect of the declaration of the constitution above set out is to provide that the right of trial by jury as it existed in the territory at the time when the constitution was adopted should be

continued unimpaired and inviolate. *Whallon v. Bancroft*, 4 Minn. 109; *State, ex rel. Clapp, v. Minn. Thresher Mfg. Co.*, 40 Minn. 213 (41 N. W. 1020); *Taliaferro v. Lee*, 97 Ala. 92 (13 South. 125).

Section 248 of the code of 1881 in force at the date of the adoption of the present constitution was as follows:

". . . either party shall have the right in an action at law, upon an issue of fact, to demand a trial by jury."

But proceedings in *quo warranto*, prohibition and the like are special and extraordinary proceedings and do not fall within the purview of § 248, *supra*, which restricted the right of trial by jury to actions denominated as actions at law. *Whallon v. Bancroft, supra; State v. Minn. Thresher Mfg. Co., supra; Taliaferro v. Lee, supra.*

This construction of the constitutional provision in question harmonizes with the further provision contained in § 4, art. 4 of the constitution, which provides that, "The supreme court shall have original jurisdiction in . . . *quo warranto* . . . ," and any other construction of the first mentioned provision would render the latter provision of the constitution nugatory and ineffectual. But aside from this, we think that, by the great weight of authority, the *right* to trial by jury in *quo warranto* proceedings did not exist at common law at the date of the early settlement of this country. We have discovered no case in which the *right* was upheld prior to the passage of the act of parliament in 1730, known as 3 George II, ch. 25, and, as well said by the supreme court of Arkansas in *State v. Johnson*, 26 Ark. 281:

"If this right existed before this time, it was cer-

tainly a work of supererogation on the part of parliament to enact the law."

One of the best considered cases which we have examined upon this subject is that of *Taliaferro v. Lee*, *supra*, decided in 1893, wherein it is said that:

" In proceedings to try the right to a public office there was no common-law right of the suitor to a trial by jury, and hence, such suitor is not within the protection guaranteed by that clause of the bill of rights which provides that the right of trial by jury shall remain inviolate."

See, also, Spelling, Extraordinary Relief, § 1875; *State, ex rel. Atty. Gen., v. Vail*, 53 Mo. 97; *Wheat v. Smith*, 50 Ark. 266 (7 S. W. 161); *State, ex rel. Norton, v. Lupton*, 64 Mo. 415 (27 Am. Rep. 253).

2. The respondent contends that the charter amendments upon which the right of the appellant to the office is based were never legally submitted or adopted by the voters, because the notice required by the constitution and laws of the state and ordinance of the city council was not given. The provision of the constitution upon which this contention rests is § 10, art. 11, providing:

"   .   .   .   All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such election, and shall be given for at least ten days before the day of election in all election districts of said city.   .   .   ."

The provision of the statute, upon which the respondent relies, makes it the duty of the legislative authority of the city to —

" Give at least ten days' notice in each election district of said city, by publishing such notice in two daily newspapers published in said city, and by *causing the same to be posted at each polling place in the sev-*

*eral election districts thereof,* of an election, which notice shall specify the object for which said election is called." Sec. 3, act of March 24, 1890, Session Laws 1890, p. 216.

Section 4 of the ordinance submitting the proposed amendments is as follows:

"That it shall be the duty of the city clerk, and he is hereby ordered and required, to post at each of the polling places within the city of Tacoma, on or before said April 7th, 1896, so that the same shall be prominently posted upon that date, a full, true and correct certified copy of each and every one of the proposed amendments to the said city charter as contained in this ordinance, for reference by electors and election officers."

The clerk complied with section 4 of the ordinance in all particulars, except that he did not post certified copies of the proposed amendments in the different polling places within the city. But the court found that newspaper clippings *containing copies of the proposed amendments "were duly posted in all of the voting booths* of the city of Tacoma by the election officers at said voting places." The court also found that notice of the election signed by the city clerk was published in the Tacoma Daily Ledger, the Tacoma Morning Union and the Evening News — all daily newspapers published in said city— from the 28th of March to the 7th day of April, inclusive, and that no other or further notice of such election, nor the election on said proposed amendment, was given. The court found that these newspapers circulated throughout the political divisions of the city of Tacoma, and one hundred and twenty thousand copies were distributed in each and every one of the political divisions and precincts; also,

"That the said amendments were discussed by the

people generally in their homes, from the platform and from the pulpit in the various churches of the city to such an extent that the pendency of said election for the adoption or rejection of said proposed amendments *was a matter of public notoriety throughout said city.*"

The election at which these proposed amendments were submitted was the *annual municipal election* provided by law for the election of city officers. It appears from the record that at that election 5364 was the highest number of votes cast, and that of this number 3094 votes were cast upon the question of the amendment which related to the office of commissioner of public works. The trial court concluded:

"That the posting of full, true, correct and certified copies of each and every one of the proposed amendments to the city charter, as contained in ordinance 1061, at each of the polling places in the city of Tacoma on or before April 7, 1896 [the date provided for the election], was a prerequisite to the holding of the election on said date as to the adoption of the said proposed amendments, and such notice not having been given, no legal election was had."

Also,

"That the notice prescribed by section 10, article XI of the Constitution of the state of Washington, and section 3 of the act of the legislature of said state, on March 24th, Laws of 1890, was and is a notice *to be posted at each polling place* and in each election district of the city proposing to adopt charter amendments."

We think the conclusions of the learned trial judge cannot be sustained. The section of the constitution referred to is silent as to the method of giving notice. In other words, it does not provide the particular kind of notice or state how it shall be given. The language is that notice "shall be given for at least ten days . . . in all election districts of the city." We think

it does not follow from this language that notice could only be "given" by *posting* notices in each election precinct, and yet that is what the court in effect held. But it must be conceded that the kind of notice prescribed by the statute and the ordinance was not given, and the question turns upon whether the failure to give such notice invalidates the election. The rule established by an almost unbroken current of authority is that the particular form and manner pointed out by the statute for giving notice is not essential, and where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient. The vital and essential question in all cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election. *Wheat v. Smith, supra,* McCrary, Elections, § 143 *et seq.;* Cooley, Const. Lim., p. 88 *et seq.; Dishon v. Smith,* 10 Iowa, 212; *State ex rel. Torreyson v. Grey,* 21 Nev. 378 (32 Pac. 190); *Chicago, etc., R. R. Co. v. Pinckney,* 74 Ill. 277; *Commonwealth v. Smith,* 132 Mass. 289; *State v. Jones,* 19 Ind. 356.

Indeed, we think the question must be regarded as settled in this state by the decision of this court in *Seymour v. Tacoma,* 6 Wash. 427 (33 Pac. 1059). It was there said that:

"The formalities of giving notice, although prescribed by statute, are directory merely, unless there is a declaration that unless the formalities are observed the election shall be void. 'It is a canon of election law that an election is not to be set aside for a mere informality or irregularity which cannot be said in any manner to have affected the result of the election.' Dillon, Mun. Corp. § 197, n. 3, and cases cited."

Applying this well established rule to the facts found in the case at bar, it becomes at once apparent that the failure of the city clerk to discharge his full duty under the law, and to observe in detail the provisions of the statute and ordinance in reference to the giving of notice, did not render the election invalid.

Having ascertained "that the amendments were discussed by the people generally in their homes  .  .  . to such an extent that the pendency of said election for the adoption or rejection of said proposed amendments was a matter of public notoriety throughout said city," and having further ascertained by the vote actually polled that the great body of the electors expressed their will upon these amendments, which it was their province to adopt or reject, the conclusion is inevitable that the result of the election was not affected by the fact that a literal compliance with the formalities prescribed by law for giving notice was not observed. The very purpose for which the statute directed the posting of notices was accomplished when actual knowledge of the election was brought home to the voter, it matters not by what means the knowledge was imparted to him.   To hold otherwise would be to disregard the expressed will of the people in a matter which the law has confided to them.

3. The lower court found that the appointment of Doherty was never confirmed by the city council and upon this finding based a conclusion that he had no right to assume the privileges or duties of the office of commissioner of public works until his appointment was confirmed by the city council.   The respondent contends that this in itself constitutes sufficient reason for affirming the judgment, but we think the conclusion, that without confirmation by the council the

appellant could not hold the office here in dispute, was unwarranted. Sec. 1 of amendment No. 3, which we have found was adopted, does not require that the appointment of the commissioner of public works shall be confirmed — on the contrary, it expressly provides that the person appointed by the mayor "shall hold office at the pleasure of the appointing power," and it further provides that conflicting provisions of the charter should be deemed amended accordingly.

4. We do not deem it necessary to advance further reasons for our conclusion that the court erred in holding that the amendments failed because they were recorded in the charter book by the city comptroller, acting as city clerk, instead of by the city clerk. What has been said under point 2 in this opinion applies with equal force to this question, and in addition thereto the omission of the clerk to record the amendments would at most only concern the manner in which they might be proved. They became amendments, by virtue of the *vote of the electors* and not by virtue of their being recorded in a particular method. The only object attained by recording them in a particular manner is that they are thereby entitled to have judicial notice taken of them by all courts of the state.

5. We think the notice of election as published was sufficient, when considered in connection with the ordinance which contained the proposed amendments — and of the existence of which all persons within the city must be presumed to have had knowledge — to convey to the voters all necessary information in reference to the character of the proposed amendments, and hence the notice sufficiently specified the object for which the election was called, within the meaning of the constitutional provision regarding notice.

We have also examined the other objections urged in the brief of respondent against the validity of these amendments, and without especially enumerating them, we deem it sufficient to say that we do not regard them as being entitled to serious consideration. Upon the record we think that the appellant was entitled to judgment confirming his right to the office and that the court erred in directing otherwise.

The judgment appealed from will be reversed and the caused remanded with instructions to the lower court to proceed to render judgment in favor of the appellant in accordance with this opinion.

SCOTT, C. J., and REAVIS and ANDERS, JJ., concur.

DUNBAR, J. (*dissenting*).—I think the constitution, fairly construed in the light of the law as it then existed in relation to notices of the kind, meant a notice by posting, and, if that be true, no other kind of notice, however efficient, can be substituted. I therefore dissent.