[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a request for declaratory judgment to determine the validity of Section 8.01 of the Cranston Home Rule Charter, which requires the City Solicitor to be a qualified elector of the City of Cranston, as applied to the current non-resident City Solicitor, whom the City Council appointed at a time when the printed City Charter erroneously omitted the qualified elector requirement. Petitioner City of Cranston (Petitioner)[1] brings this action to determine whether the current City Solicitor can maintain her position because she was appointed under belief of eligibility due to a misprinted charter. Respondent City of Cranston (Respondent) seeks invalidation of the qualified elector requirement, or an order from this Court allowing the current City Solicitor to serve at the pleasure of the mayor until a new mayor takes office. Jurisdiction in this Court is pursuant to G.L. 1956 § 9-30-1.
 FACTS AND TRAVEL
In 1962, the City of Cranston adopted its Home Rule Charter (charter) pursuant to Article XIII of the Amendments to the Rhode Island Constitution. Section 8.01 of the charter provides:
 "There shall be a department of law which shall consist of the city solicitor and such assistant city solicitors and other employees as may be provided by ordinance. The city solicitor shall be appointed and removed by the mayor as provided in section 5.02. He shall be a qualified elector of the City of Cranston, an attorney at law admitted to practice in the courts of Rhode Island and shall at the time of his appointment have so practiced for five years. He shall appoint to serve at his pleasure the assistant city solicitors who shall be electors of the city of Cranston and attorneys at law admitted to practice in the courts of Rhode Island. Such other employees of the department as there may be shall be appointed by the city solicitor, subject to the provisions of chapter 14. The compensation of the city solicitor and assistant city solicitors shall be fixed by ordinance."
On November 3, 1998, the voters of Cranston could have amended this section. Twenty-five referenda questions appeared on the November 3, 1998 Ballot. Question number 20, titled "Amendment to Cranston Home Rule Charter Solicitors May be Non-Electors of Cranston (Resolution of the City Council adopted April 27, 1996)," reads:
 "Shall an amendment to Section 8.01 of the Home Rule charter of the City of Cranston be approved, deleting therefrom the words `qualified elector of the City of Cranston' in the third and fourth sentences so that the City Solicitor and Assistant Solicitors are no longer required to be qualified electors of the city of Cranston?"
The voters rejected this amendment by a vote of 13,625 to 7,988.
The Chairman of the Cranston Charter Review Commission reviewed the tabulated results of the referenda questions and forwarded them to the Cranston City Clerk. The City Clerk sent the information to the Book Publishing Company of Seattle, Washington. The results the publishing company received, however, incorrectly eliminated the qualified elector requirement for the city solicitor. Thus, the published version of § 8.01 became:
 "There shall be a department of law which shall consist of the city solicitor and such assistant city solicitors and other employees as may be provided by ordinance. The city solicitor shall be appointed and removed by the mayor as provided in section 5.02. The city solicitor shall be an attorney at law admitted to practice in the courts of Rhode Island and shall at the time of the city solicitor's appointment have so practiced for five years. The city solicitor shall appoint to serve at the city solicitor's pleasure the assistant city solicitors who shall be attorneys at law admitted to practice in the courts of Rhode Island. Such other employees of the department as there may be shall be appointed by the city solicitor, subject to the provisions of chapter 14. The compensation of the city solicitor and assistant city solicitors shall be fixed by ordinance. (Approved at referendum 11-3-98.)"
This incorrect version of the charter was the only printed version of the charter from 2000 to 2004. In 2002, a new mayor-elect, Stephen Laffey, nominated a city solicitor, who is a Warwick, Rhode Island resident. Mayor Laffey's nominee was submitted to the Cranston City Council for its advice and consent, following Cranston City Charter § 5.02.[2]
Further, Cranston City Code § 2-9.2 requires a confirmation hearing on the City Solicitor appointment. No objection or even notice of the City Solicitor's residence was made during the confirmation period, and the City Solicitor was approved and confirmed on January 27, 2003.
The Cranston City Council first learned of the misprinted charter in May, 2004, at which time it requested the City Solicitor to refrain from signing ordinances until this Court reviewed the petition for declaratory judgment. Petitioner brings this action to determine the validity of the qualified elector requirement as applied to the current City Solicitor, who was appointed and approved even though she is not a qualified elector of the City of Cranston.
 STANDARD OF REVIEW
The Uniform Declaratory Judgments Act (Act), G.L. 1956 §§ 9-30-1 to9-30-16, grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." Section 9-30-1. The Act also provides that the Superior Court may grant additional affirmative relief "based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." Capital Props., Inc. v.State, 749 A.2d 1069, 1080 (R.I. 1999) (citing §§ 9-30-8, 9-30-12; Sousav. Langlois, 97 R.I. 196, 199, 196 A.2d 838, 841 (1964)). Section 9-30-2
provides, in part, that
 "any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
The purpose of the Act is "to facilitate the termination of controversies." Capital Props. Inc., 749 A.2d at 1080. The decision to issue a declaratory judgment lies within the trial justice's discretion.Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997) (citing WoonsocketTeachers' Guild Local Union 951, AFT v. Woonsocket School. Comm.,694 A.2d 727, 729 (R.I. 1997)); Lombardi v. Goodyear Loan Co.,549 A.2d 1025, 1027 (R.I. 1988) (citing Employers' Fire Ins. Co. v.Beals, 103 R.I. 623, 628, 240 A.2d 397, 401 (1968)). Section 9-30-12
provides that the Uniform Declaratory Judgments Act should be "liberally construed and administered."
 REQUEST FOR DECLARATORY JUDGMENT
Petitioner brings this action to this Court with a request for declaratory judgment on four issues: first, whether the qualified elector requirement is applicable to the current City Solicitor; second, whether the qualified elector requirement is constitutional; third, when a referendum vote becomes controlling law and what its effect is if an Amendment is misprinted; and fourth, whether this Court has equitable power to allow a non-resident City Official to continue in his or her position when the charter requires him or her to be a qualified elector. In response, Respondent seeks invalidation of the qualified elector requirement, or, in the alternative, an equitable order from this Court allowing the current City Solicitor to serve at the pleasure of the mayor for "as long as that may be," and for the qualified elector requirement to commence upon the election of a successor Mayor in the City of Cranston.
Before discussing the validity of the residency requirement itself, or discussing any equitable principles, this Court must first determine whether the residency requirement, as omitted from the printed charter, is applicable to the current City Solicitor. Thus, this decision will discuss Petitioner's third argument first and then move to Petitioner's first, second, and fourth arguments respectively.
 Whether the Qualified Elector Requirement Applies to the Current City Solicitor
Petitioner contends that the misprinted charter is not controlling law and that the qualified elector requirement of § 8.01, as upheld by the voters of Cranston in 1998, is controlling. Petitioner notes that G.L. 1956 § 45-2-9 requires that provisions in the Charter of the City of Cranston remain effective until they are appropriately overturned and that § 8.01 was never altered or annulled by vote or by law. Additionally, Petitioner argues that the improper recording of the charter amendment does not render the misprint valid. Respondent, in agreement, states that the error does not itself invalidate the original charter provision.
"The acts, laws, and orders of towns and cities shall continue in force until altered or annulled by vote of the town or city, or by law." Section 45-2-9. Furthermore, "[e]very town, city, and district has all the existing powers and privileges, and is subject to all existing duties and liabilities, conferred or imposed upon it by its charter, . . . until the charter or acts expire by their own limitation, or are revoked or repealed." Section 45-2-1. A city or town has the authority to adopt and amend a charter "at any time," and in a manner "not inconsistent with [the Rhode Island] constitution and laws enacted by the [Rhode Island] general assembly in conformity with the powers reserved to the general assembly." R.I. Const. art. XII, § 2. Once a city has adopted a charter according to § 7 of Article XII — first electing a charter commission to frame a charter, which then submits the charter to the legislative body of the city, which next publishes the charter and submits it to the city electors for vote — the proper method for amending the charter is found in § 8. Section 8 of Article XII of the Rhode Island Constitution states:
 "The legislative body of any city or town may propose amendments to a charter which amendments shall be submitted for approval in the same manner as provided in this article for the adoption of a charter except that the same may be submitted at a special election. . . ."
A charter "become[s] effective upon the date fixed therein." R.I. Const. art. XIII, § 7. An amendment to a charter, if the constitutional and charter requirements of adoption are met, "become[s] at once a part of the charter. . . ." 2A Eugene McQuillin, The Law of MunicipalCorporations § 9.24 (3d ed. 1996).
In 1962, the City of Cranston adopted its charter under the Home Rule Provision of Article XIII of the Constitution of Rhode Island. On November 3, 1998, the electors of the city had the opportunity to remove the qualified elector requirement from the positions of City Solicitor and Assistant City Solicitor. The electors chose to maintain the requirement in a decisive vote. A proposed amendment does not become law by its mere recording. The electors must approve of the amendment to overrule a city's charter provisions.
Additionally, Petitioner cites to a 1897 Washington Supreme Court decision in which the court found that an election was not invalid because the city clerk failed to perform his full duty under the law and to observe in detail the provisions of the statute and ordinance with regard to giving notice of an election. State ex rel. Mullen v. Doherty,47 P. 958, 961 (Wash. 1897). After holding that the particular form and manner prescribed for giving notice under the statute is inessential — especially where a significant number of the electors had actual notice or showed up at the correct time and place to exercise their voting right — the Washington Court stated that amendments to the city charter did not fail "because they were recorded in the charter book by the city comptroller, acting as a city clerk, instead of by the city clerk." Id.
The Court continued, "the omission of the clerk to record the amendments would at most only concern the manner in which they might be proved. They became amendments, by virtue of the vote of the electors and not by virtue of their being recorded in a particular method." Id. (emphasis in original).
On November 3, 1998, the voters of the City of Cranston rejected the proposed amendment to remove the qualified elector requirement from the City Solicitor. The fact that the vote result was incorrectly reported to the printing company does not invalidate the results of a valid vote of the people of Cranston. See id. (noting incorrectly recording amendments does not invalidate voting results). This Court is hesitant to interfere with the will of the people. Bucci v. Fargnoli, 437 A.2d 1384, 1386
(R.I. 1981) (citing Rice v. Town Council, 35 R.I. 117, 121, 85 A. 553, 554
(1912)). Additionally, as will be discussed infra, unjustified reliance without an affirmative action on the part of the City Council inducing that reliance will not change the application of the law to the current City Solicitor.
Moreover, if the meaning of the Rhode Island General Laws is changed in reenacting individual volumes of the General Laws, the meaning is "presumed to remain unchanged unless it can be shown that the specific proposed changes were first brought to the attention of the legislature."In re Richard P., 451 A.2d 274, 276 (R.I. 1982). The meaning of the charter of the City of Cranston has been changed in its republication with a misprint. Similar to that of the General Laws, the charter's original meaning will remain unchanged unless it can be shown that the City Council knew of the incorrect alteration. In this case, the City Council first became aware of the misprint shortly before bringing the instant action.
 The Terms the Qualified Elector Requirement
Petitioner argues that the current City Solicitor is subject to the qualified elector requirement because a local government charter is fundamental law. Petitioner also contends that the qualified elector requirement conveys a definite and sensible meaning. Respondent rests on the constitutional and equitable arguments against enforcing the qualified elector requirement.
A "municipal charter of a local government is its fundamental law."Borromeo v. Personnel Board, 117 R.I. 382, 385, 367 A.2d 711, 713 (1977) (citing 56 Am. Jur. 2d Municipal Corporations § 127 (1971)). An adoption of a charter, in effect, is equivalent to an adoption of a Rhode Island General Law. O'Neil v. Town of East Greenwich, 617 A.2d 104, 111 (R.I. 1992). Under the Town of Cranston's Home Rule Charter, § 8.01, the office of the city solicitor is appointed by the Mayor and serves at the Mayor's pleasure. Additionally, the misprinted portion of § 8.01, applicable to the current City Solicitor, requires that the city solicitor and any associate city solicitors be qualified electors of the Cranston.
When a statute is "free from ambiguity and conveys a definite and sensible meaning . . . the statute declares itself." Providence TeachersUnion Local No. 958 v. Napolitano, 554 A.2d 641, 643 (R.I. 1989) (citations omitted). A charter is construed using the usual rules of statutory construction, see id., and charter provisions "should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question," Carter v. City ofPawtucket, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975). The usual rules require that courts construing a charter take intent into account and give specific words in the charter the meaning that would further that purpose. City of Warwick v. Aptt, 497 A.2d 721, 724 (R.I. 1985) (citations omitted). The charter's words will be given their ordinary meaning unless some "special meaning was obviously attributed to the words." Id.
Section 8.01 of the charter, as applies to the current City Solicitor, requires the city solicitor and assistant city solicitors to be qualified electors of the City of Cranston. No special meaning attaches to the words "qualified elector"; therefore, the charter's words shall be given their ordinary meaning. See Aptt, 497 A.2d at 724. A "qualified elector" is "[a] legal voter; a person who meets the voting requirements for age, residency, and registration and who has the present right to vote in an election." Black's Law Dictionary 1254 (7th ed. 1999). The current City Solicitor does not meet the voting requirements for residency and registration in Cranston, and she does not have the present right to vote in an election in Cranston. The current City Solicitor, therefore, is not qualified to serve in the position of city solicitor of Cranston.
 The Constitutionality of Qualified Elector Requirement
Petitioner contends that the qualified elector requirement is constitutional because it is appropriately defined and uniformly applied within the position of the Cranston city solicitor. Respondent asserts that the qualified elector requirement is not reasonably related to the position of city solicitor because the reasons for such a requirement are not present in this case. Respondent contends that the qualified elector requirement is not reasonably related to the city solicitor position because there is no such requirement for positions "of greater importance" than that of the city solicitor position. (Resp't Mem. at 7.) Additionally, Respondent states that the requirement is not reasonably related because the city solicitor, as a member of the Rhode Island Bar Association, is subject to the Rhode Island Rules of Professional Conduct, which "are perhaps more restrictive than any other professional code governing the various professionals that work in municipal government." (Resp't Mem. at 8.) Respondent also argues that the qualified elector requirement is unconstitutional because it is not uniformly applied to all positions in the City of Cranston.
A bona fide qualified elector requirement does not implicate any form of suspect classification; therefore, it is not subject to strict scrutiny analysis. Martinez v. Bynum, 461 U.S. 321, 329 (1983). The United States Supreme Court has often questioned the validity of a durational residency requirement. See Mem'l Hosp. v. Maricopa County,415 U.S. 250 (1975); Shapiro v. Thompson, 394 U.S. 618, 636 (1969). The Court, however, has not challenged nondurational residency requirements that are "appropriately defined and uniformly applied. McCarthy v.Philadelphia Civil Serv. Comm'n, 424 U.S. 645, 647 (1976); Dunn v.Blumstein, 405 U.S. 330, 342 n. 13 (1972). The Supreme Court has recognized that residency requirements are rationally related to a legitimate state interest. McCarthy, 424 U.S. at 647; Reynolds v. Lamb,102 R.I. 557, 563, 232 A.2d 375, 378 (1967) (specifically finding that it is "significant . . . that the residency requirements are part of the organic law of the city and that the people, in adopting their charter," required that a city manager live in the city while in office). The "right to travel interstate does not include the right to live in one state and simultaneously demand employment in the municipality of another." Loiselle v. City of E. Providence, 116 R.I. 585, 590,359 A.2d 345, 348 (1976). Municipalities requiring their employees to live within the city or town limits are acting rationally and "within the constitutional framework" if the "requirements are appropriately defined and uniformly applied." Loiselle, 116 R.I. at 591, 359 A.2d at 348-49.
Under a rational basis analysis, "the burden is upon the challenging party to negative `any reasonable conceivable state of facts that could provide a rational basis for the classification.'" Bd. of Trs. of Univ. ofAla. v. Garrett, 531 U.S. 356, 367 (2001) (quoting Heller v. Doe,509 U.S. 312, 320 (1993)). A state can set requirements and qualifications for individuals in "important non-elective executive, legislative, and judicial positions, for officers who participate directly in the formulation, execution, or review of broad public policy perform functions that go to the heart of representative government."Sugarman v. Dougall, 413 U.S. 634, 647 (1973). In Loiselle, the Court recognized a number of reasons listed by the California Supreme Court that exist for retaining a residency requirement for government employees, including
 "`diminution of absenteeism and tardiness among municipal personnel'; the improvement of the quality of employee performance by their greater knowledge of the municipality's conditions and their feeling of having a greater personal stake in the progress of the municipality; the ready availability of trained personnel in emergencies; and the economic benefits flowing from the expenditure within the community of the employees' salaries." Loiselle, 116 R.I. at 591-92, 359 A.2d at 349 (citing Ector v. City of Torrance, 514 P.2d 433, 436 (Cal. 1973)).
"[D]etermining whether a residency requirement is `appropriately defined' derives from the purpose of such requirements." Holt Civic Club v.Tuscaloosa, 439 U.S. 60, 82 (1978). While asserting that the qualified elector requirement is unconstitutional because it is not rationally related to the position of city solicitor, Respondent states that "[a] review of cases decided nationally does uphold a residency requirement on all workers who are employed by the given municipality" (Resp't Mem. at 5), and cites Loiselle, a 2004 Seventh Circuit case, a 1988 Northern Illinois District Court case, and a 1999 West Virginia Supreme Court case in support of that proposition. However, cases do exist, as for example, in the Seventh Circuit[3] and in the Tenth Circuit,[4] in which residency requirements that did not apply to all city, municipal, or government workers were upheld.
Respondent notes a number of other Cranston city positions that are not subject to a qualified elector requirement. Respondent argues that "[i]t is hard to imagine a rational basis" to justify requiring a treasurer or finance director — and not the city solicitor — to live in Cranston because the reasons for a qualified elector requirement include "loyalty, public safety and economic enhancement of the municipality." (Resp't Mem. at 6-7.) The treasurer and finance director are "positions of greater importance" because they handle "the millions of dollars that flow to and from the city." (Resp't Mem. at 7.) Respondent additionally argues "if any residency requirement exists it should be for [the Cranston City Council's attorney]," because "[t]he council attorney is the direct advisor to the peoples' representative form of government." (Resp't Mem. at 8.) Furthermore, Respondent notes that City police and firemen do not have to live in the city per state statute, G.L. 1956 §45-2-15, and that "one might expect to see a residency requirement" for these positions because a "large scale public emergency would require rapid response time that would be diminished by public safety officials traveling" from other towns or cities. (Resp't Mem. at 7.) Respondent seemingly contends that the qualified elector requirement for the city solicitor position is invalid because § 45-2-15 prohibits any city and town from requiring that firefighters or police officers reside in the city or town as a condition for employment. This argument was rejected inLoiselle, with the Court stating that "[§ 45-2-15] in no way derogates the validity of the residency requirement adopted by East Providence."Loiselle, 116 R.I. at 592, 359 A.2d at 349.
This Court must examine the qualified elector requirement under the rational basis standard. A non-suspect classification, distinguishing one group of individuals from another group, will be struck down for constitutional reasons if "no grounds can be conceived to justify them."McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 809 (1969). "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." Id. In fact, if "any reasonably conceivable state of facts that could provide a rational basis for the classification" exists, this Court must uphold the distinction as constitutional. Heller, 508 U.S. at 320 (citing FCC v. BeachCommunications, Inc., 508 U.S. 307, 313 (1993)). The burden is on the individual challenging the classification to disqualify "any reasonable conceivable state of facts that could provide a rational basis for the classification." Bd. of Trs. of Univ. of Ala., 431 U.S. at 367.
Petitioner states that the qualified elector requirement is constitutional because "the residency requirement has a rational purpose by ensuring that certain public officials of the City of Cranston are involved in the local atmosphere." (Pet'r Mem. at 13.) Respondent contends that reasons exist for other city positions in the charter without the qualified elector requirement to have the requirement instead of the city solicitor. Additionally, Respondent argues that the reasons for requiring the city solicitor to be a qualified elector of the city are not necessary because the City Solicitor, as a member of the Rhode Island Bar Association, is subject to a higher standard of duty and ethical behavior. This duty of care and claimed higher standard of ethics, however, does not disqualify the valid reasons for maintaining a qualified elector requirement, like lowering absenteeism and tardiness and having a greater feeling of personal stake in the municipality. SeeLoiselle, 116 R.I. at 591-92, 359 A.2d at 349. Respondent has not stated why this Court should invalidate these reasons in support of the classification, aside from the fact that the city solicitor must maintain an "utmost duty of loyalty" and "possess the highest ethical standards." (Resp't Mem. at 7.) Therefore, Respondent's argument that there is no rational purpose for the qualified elector requirement for the city solicitor position fails.
Respondent next contends that the qualified elector requirement is unconstitutional because it is not uniformly applied throughout the City of Cranston. Petitioner argues that "uniformly applied" does not require all city employees to be subject to the qualified elector requirement because the requirement must be uniformly applied within the particular position. In support, Petitioner lists positions listed in the Cranston City Charter that require the employees and officials to be qualified electors.[5] Respondent counters with a list of other city positions with no qualified elector requirement.[6]
Petitioner cites Loiselle in support of its argument that all city employees do not need to be subject to the residency requirement to make it valid. In Loiselle, Petitioner states, the plaintiff challenged the residency requirement as not being uniformly applied because the General Assembly had enacted legislation prohibiting residency requirements for firefighters and police officers. Respondent contends, in a footnote, that this characterization of Loiselle is incorrect because Loiselle
required residency of all East Providence employees or appointees. In another footnote, Respondent cites Loiselle and argues that the solicitor's position, aside from elected officials, "is the only similar position that carries with it a residency requirement." (Resp't Mem. at 4.)
In Loiselle, the Court upheld a residency requirement that all appointees and employees of the city to become city residents within six months of beginning their employment. The Court in Loiselle stated that it is "within the Legislature's prerogative to specify what municipalities may do with regard to employees who aid or assist in the discharge of a state responsibility." 116 R.I. at 592, 359 A.2d at 349. "Therefore," the Court continued, an act of the Legislature "in no way derogates the validity of the residency requirement. . . ." Id. at 592,359 A.2d at 349. Thus the Court upheld a residency requirement that did not apply to all employees of East Providence, as it excluded both the police officers and firefighters.
If a qualified elector requirement is uniformly applied, there is nothing "invidiously discriminatory about [it]," and the remaining question is "whether there is a rational basis for it." Martinez,461 U.S. at 329. Case law clearly demonstrates that qualified elector or residency requirements do not need to apply to all city or municipality employees for it to be upheld. See Loiselle, 116 R.I. at 592,359 A.2d at 349 (upholding constitutionality of residency requirement that applies to all municipal employees except for firefighters or police officers); see also Kiel v. City of Kenosha, 236 F.3d 814 (7th Cir. 2000); Mogle v. Sevier County Sch. Dist., 540 F.2d 478, 484 (10th Cir. 1976) (unwritten residency requirement constitutional as applied to school counselor and not teachers in same school); Abrahams v. CivilServ. Comm'n, 319 A.2d 483, 484 n. 1, 489 n. 5 (N.J. 1974) (upholding and finding constitutional residency requirement for all municipal employees except counsel, attorneys, engineer or health officers, an auditor or comptroller, and police officers or firefighters). Therefore, Respondent argument that the qualified elector requirement must apply to all municipal employees for it to be constitutional also fails.
 THE EQUITABLE ARGUMENT TO KEEP THE CURRENT CITY SOLICITOR
Respondent contends that this Court should allow the current City Solicitor to serve at the pleasure of the current Mayor and the qualified elector requirement should begin once a new Mayor takes office. In support of retaining the current City Solicitor, Respondent notes that the City Council was in the best position to know what the charter should have said, the current Mayor reasonably relied upon the "actual authority" of the clerk's office of the City of Cranston, and the current City Solicitor would be costly to replace because she is an important, if not indispensable, part of the current administration. Petitioner argues that this Court does not have equitable power to allow the current City Solicitor to keep her position because she did not possess the fundamental qualifications to hold the office in the first place.
Ignorance of the law is not an excuse for an individual to violate it, even if the individual tried to learn the law and was misled by another.State v. Foster, 22 R.I. 163, 168, 46 A. 833, 835 (1900). However, estoppel may be used against a municipal authority "where appropriate circumstances so require." Loiselle, 116 R.I. at 593, 359 A.2d at 349;see also Tech. Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997); Greenwich Bay Yacht Basin Assocs. v. Brown, 537 A.2d 988, 991
(R.I. 1988). For equitable estoppel to apply against a municipal corporation, the agents of the municipality must have made an affirmative representation or equivalent conduct, directed at an individual "for thepurpose of inducing the other to act or fail to act in reliance" on the representation, and the representation must have induced the individual to act, or fail to act, to his detriment. El Marocco Club, Inc. v.Richardson, 746 A.2d 1228, 1234 (R.I. 2000) (emphasis added) (quotingProvidence Teachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92
(R.I. 1997)). Mere nonaction on the part of the municipal corporation is insufficient to justify applying estoppel, as there must be somepositive action on the part of the municipality's agent that induced the action of the adverse party. Ferelli v. Dep't of Employment Sec.,106 R.I. 566, 593, 261 A.2d 906, 909 (1970).
Respondent argues that the city, through the clerk's office, made an affirmative representation that the copy of the charter was correct when it provided a copy for the mayor's transition team. The clerk's office, according to Respondent, was in the best position to know of the mistake in the charter because the office is "cloaked with actual authority . . . to disseminate, record and keep accurate city laws for inspection by the public." (Resp't Mem. at 9.) Respondent cites §§ 3.08 and 4.01 of the Cranston City Charter in support of this proposition. These sections, however, require the city clerk to keep a complete record of meetings and actions of the city council, and "such other records and files as the council may require" for public viewing, § 3.08, and to keep an "accurate" record of city council proceedings, § 4.01. Nothing is mentioned in these sections that requires the clerk to keep accurate city laws on file, as Respondent seems to suggest.
Merely handing a copy of the charter to the mayor's transition team is not a sufficient representation by word or deed to justify relying on the printed charter when the clerk's office does not have the authority to maintain the charter's accuracy. See Casa DiMario, Inc. v. Richardson,763 A.2d 607, 612-13 (R.I. 2000) (noting authority of public official required). Even if handing over a copy of the misprinted charter constituted the requisite representation, and the clerk's office had the responsibility to ensure that the printed charter was correct, this representation was not for the purpose of inducing Respondent to act in reliance on that representation to a detriment. "The key element of an estoppel is intentionally induced prejudicial reliance." E. GreenwichYacht Club v. Coastal Res. Mgmt. Council, 118 R.I. 559, 568, 376 A.2d 682,686 (1977) (citation omitted). Respondent does not provide any evidence or even discuss Petitioner's intent to induce reliance. No evidence was presented that demonstrated that Petitioner, through the clerk's office, intended any reliance when they handed the mayor's transition team a copy of the misprinted charter.
Moreover, the city clerk's office does not have the authority to change, alter, or modify laws that were approved or disapproved by a qualified vote. See Romano v. Ret. Bd. of Employees' Ret. Sys.,767 A.2d 35, 39-40 (R.I. 2001). Thus, for example, "an estoppel cannot be applicable when the municipality's acts were clearly ultra vires," as when a municipality enacts an ordinance which is inconsistent with a state statute. Tech. Investors, 689 A.2d at 1062. The authority of the clerk's office under the charter does not extend to ensuring that the printed version of the charter is accurate. Agents for the municipality must be acting within the scope of their authority, Lerner v. Gill, 463 A.2d 1352,1362 (R.I. 1983), and the individual interacting with the agent is charged with the responsibility to know the extent of the capacity of the municipal corporation, Viera v. Jamestown Bridge Comm'n, 91 R.I. 350, 359,163 A.2d 18, 23 (1960).
Petitioner further argues that this Court does not have equitable power to allow the current City Solicitor to maintain her position because the current City Solicitor never held the proper qualifications to hold the position. Petitioner cites to § 5.02 of the Cranston City Charter, which, read in conjunction with § 8.01, requires that the appointee of the mayor serves "at the pleasure of the mayor, subject only to the appointee's possession of qualifications prescribed by this Charter." Section 5.02. Petitioner states that the city is acting within its charter and trying to correct the misprint, and therefore reflecting the will of the people of Cranston as exhibited on November 3, 1998. Respondent again contends that estoppel is appropriate because the city clerk's office, maintaining actual authority, made an affirmative representation that induced Respondent to act to a detriment. Furthermore, Respondent claims that the mayor's transition team and the current City Solicitor relied on the actual authority of the clerk's office to their detriment because the current City Solicitor has gained institutional knowledge that will be burdensome for a new city solicitor, meeting the qualified elector requirement, to develop. Respondent argues that "Cranston . . . has for the first time in recent years a full-time city solicitor," and that "[h]er full-time status affords her a unique perspective on the mechanics of city government, the inner workings of contracts and a handle on the various major litigation actions presently pending." (Resp't Mem. at 11.) Additionally, Respondent notes that the current "administration hired the current city solicitor and the city solicitor accepted this position with the expectation that she would serve at the pleasure of the mayor. . . . There is no reason to change either expectation at this point." (Resp't Mem. at 11.) It is true that the current City Solicitor has institutional knowledge that has grown in her approximately two years of service to the city of Cranston. However, it is also true that the current City Solicitor serves at the pleasure of the mayor and is an at-will employee. The mayor can dismiss the current City Solicitor despite her institutional knowledge and job experience and appoint another city solicitor.
The fact that the omitted qualified elector requirement has not been recognized since the misprinted charter in 1998 does not require this Court to award the current City Solicitor that position. In Loiselle, the plaintiff argued that the city should be estopped from enforcing a residency requirement because he worked for the city for more than two years before the city began to enforce a 6-month residency requirement.Loiselle, 116 R.I. at 592-93, 359 A.2d at 349. The court in Loiselle
noted that the submitted agreed statement of facts did not support an assertion of detrimental reliance on the part of the plaintiff, and the court stated that the plaintiff did not make any effort to resolve the "problem until 3 days before he was slated to be fired." Loiselle,116 R.I. at 593, 359 A.2d at 349. The Rhode Island Supreme Court has held that even assurances that the city would forbear from imposing a residency requirement, and the fact that "no member of the [city] council urged that [the petitioner] take up residence or criticized" the petitioner's failure to abide by the charter did not nullify the residency requirement provided for in the city charter. Reynolds, 102 R.I. at 563,232 A.2d at 378. With respect to dealing with a municipality, one is "bound at his own peril to know the extent of its capacity," CasaDiMario, Inc., 763 A.2d at 612, so, in the instant matter, the clerk's office cannot be charged with the responsibility of maintaining a mistake-proof charter. Furthermore, in Technology Investors, our Supreme Court specifically recognized, with respect to estoppel, that reliance on an ordinance that "was enacted in clear contravention of state law" was not reasonable for a sophisticated lawyer. 689 A.2d at 1062. This Court similarly declares that the reliance of the City Solicitor on the misprinted ordinance, published in contradiction to the valid will of the people, does not constitute reasonable reliance warranting estoppel.
 CONCLUSION
For the above reasons, this Court declares that the applicable law is that upheld by the voters of the City on November 3, 1998 and not the misprinted language of § 8.01 of the Cranston City Charter. Additionally, this Court finds that the qualified elector requirement is constitutional under the rational basis standard, and that Respondent has not met its burden of showing estoppel is applicable here. Counsel shall submit an appropriate order for entry.
[1] Both Petitioner and Respondent are the City of Cranston; however, Petitioner City of Cranston represents the City Council of the City of Cranston, and Respondent City of Cranston represents the Mayor and current City Solicitor of the City of Cranston.
[2] Section 5.02, titled "Power of appointment and removal" reads:
 "The mayor, with the advice and consent of the city council, shall have the power to appoint the heads of all departments except the department of records. . . . [H]eads of departments shall be appointed to serve at the pleasure of the mayor, subject only to the appointee's possession of qualifications prescribed by this Charter. . . ."
[3] Kiel v. City of Kenosha, 236 F.3d 814 (7th Cir. 2000) (affirming residency requirement for firefighters).
[4] Mogle v. Sevier County Sch. Dist., 540 F.2d 478 (10th Cir. 1976) (upholding unwritten residency requirement as applied to school counselor and not teacher in same school system).
[5] Petitioner lists the elected positions of School Committee members, officers of the City, and the appointed positions of Probate Judge, Zoning Board of Review members, Advisory Committee on Parks and Recreations members, City Plan Commission appointed members, and Personnel Appeal Board members, as positions requiring individuals to be qualified electors of the City of Cranston.
[6] Respondent lists the positions of finance director, city treasurer, city purchasing agent, treasurer's deputy, city tax assessor, police chief, fire chief, building inspector, director of public works, superintendent of buildings, director of parks and recreation, director of personnel, city clerk, city council attorney, and city planner as not having qualified elector or residency requirements.